SHARON STEEL CORPORATION,
Petitioner,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

BETHLEHEM STEEL CORPORATION,
Petitioner,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

Nos. 78–1522, 78–1523.

United States Court of Appeals,
Third Circuit.

Argued March 23, 1979.

Decided April 25, 1979.

Blair S. McMillin, Pittsburgh, Pa. (argued), Robert A. Emmett, Reed, Smith,

Shaw & McClay, Washington, D. C., for petitioners.

James W. Moorman, Asst. Atty. Gen., Bradford F. Whitman, Asst. Chief, Pollution Control Section, Barbara H. Brandon (argued), Atty. U. S. Dept. of Justice, James N. Cahan, Atty., U. S. Environmental Protection Agency, Washington, D. C., for respondent; Joan Z. Bernstein, Gen. Counsel, U. S. Environmental Protection Agency, Washington, D. C., of counsel.

Before ALDISERT, ADAMS and RO-SENN, Circuit Judges.

### OPINION OF THE COURT

ROSENN, Circuit Judge.

Pursuant to the 1977 amendments to the Clean Air Act ("the Act") enacted by Congress, 42 U.S.C.A. § 7401 et seq. (West Supp.1977), the Administrator of the Environmental Protection Agency ("Administrator") issued a final rule by which he determined the status of air quality for certain areas in the country in relation to national ambient air quality standards for various air pollutants. In his haste to implement the new Congressional provisions within the statutory deadline set by Congress, the Administrator dispensed with prior notice and comment before adopting the rule.

In this case we are asked to decide whether the Administrator had good cause to adopt the final rule without prior notice and comment and, if so, whether the rule was arbitrary and capricious. We hold that the Administrator lacked good cause and that this matter must be remanded to him for further action. We need not determine whether the rule was arbitrary and capricious.

### I.

Sharon Steel Corporation ("Sharon") and Bethlehem Steel Corporation ("Bethlehem") (collectively, the "companies") have brought petitions for review of the final rule issued by the Administrator. 42 U.S.C.A. § 7607 (West Supp.1977). The challenged rule embodies the Administrator's determination that in four areas of Pennsylvania [1] the air does not meet the national ambient air quality standards for a pollutant known as "total suspended particulate."

We begin our analysis by placing this rule in its statutory context. The Administrator has issued standards for air quality under authority of the amended Act. That Act calls for the Administrator to formulate two types of standards: (a) "primary ambient air quality standards," which set such restrictions on pollution as are necessary to protect public health with an "adequate margin of safety"; and (b) "secondary ambient air quality standards," which decree those limits necessary to advance the public welfare (for example, by preventing damage to property). See 42 U.S.C.A. §§ 7409(b), 7602(h) (West Supp.1977). In accordance with the Act, the Administrator has now promulgated primary and secondary standards governing six pollutants, including total suspended particulate.

According to the Act, each state must draw up a "state implementation plan," under which the air throughout the state must be brought into conformity with first the primary and later the secondary standards by certain statutory deadlines. To begin the procedures leading eventually to an implementation plan, every state, by December 5, 1977, had to collect data about air quality and submit to the Administrator a list designating each area of the state as "attainment," "non-attainment," or "unclassifiable." 42 U.S.C.A. § 7407(d)(1) (West Supp.1977); 43 Fed.Reg. 40412 (September 11, 1978). The designation "attainment" meant that the quality of the air in an area already met both the primary and secondary standards; "non-attainment" meant that the air contained pollutant levels higher than those permitted by national ambient air quality standards. When there was insufficient information to decide

---

1. The areas are the City of Sharon, the City of Farrell, the Allentown-Bethlehem-Easton Air Basin, and the Harrisburg Air Basin.

whether the standards had been satisfied in a particular area, the state designated that area as "unclassifiable." After the states submitted their lists, the Administrator had until February 3, 1978, in which to "promulgate each such list with such modifications as he deem[ed] necessary." 42 U.S.C.A. § 7407(d)(2) (West Supp.1977). The states then had until January 1, 1979, to compose their implementation plans, under which they detailed measures for achieving compliance by the statutory deadlines.

Pennsylvania duly submitted its list of designations to the Administrator. Without providing notice or an opportunity for comments, the Administrator issued the modified designations as a final rule.[2] In dispensing with the notice and comment requirement of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1976), the Administrator relied on the APA's exception for "good cause," 5 U.S.C. § 553(b)(B) (1976): "[T]his subsection does not apply . . . when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." The statutory schedule for state implementation plans, the Administrator declared, created an urgency that precluded prior notice and comment. Although omitting prior notice and comment, the Administrator did invite comments in the sixty days after he promulgated the rule, and he promised to modify the rule if the comments should show any modification to be necessary.

Among the areas designated by the rule as "non-attainment" were the four involved in this case. In each of these areas, either Bethlehem or Sharon operates a plant, and the companies assert that the non-attainment designations will impose stringent limits on their operations. *See* n.8 *infra.* Contesting the designations on both procedural and substantive grounds, Bethlehem and Sharon filed petitions for review.

## II.

Disputing the Administrator's declaration of good cause, the companies argue that the Administrator did not have sufficient justification for dispensing with prior notice and comment. We agree.[3]

The Administrator concedes that the action now under review was "rule making" under 5 U.S.C. § 553 (1976). Absent good cause, the APA requires prior notice of a proposed rule and an opportunity for interested persons "to participate in the rule making through submission of written data, views, or arguments . . . ." 5 U.S.C. § 553(c) (1976). In the Administrator's view, the statutory schedule decreed by the amended Clean Air Act, 42 U.S.C.A. §§ 7401 *et seq.* (West Supp.1977), made prior notice and comment "impracticable" and "contrary to the public interest," so that the Administrator had good cause to forego these usual requirements. Had there been prior notice and comment, the Administrator contends, the states would not have had enough time to draw up their implementation plans. Because the states, under the terms of the Act, did not submit their initial designations until December 5, 1977, and because the Administrator needed until March 3, 1978, to review these designations,[4] the Administrator urges that a further delay for prior notice and comments would have made it difficult for the states to meet the January 1, 1979, deadline for their implementation plans.

Mindful that the APA's exception for good cause is to be narrowly construed,

---

**2.** The Administrator missed the statutory deadline by a month and issued the rule on March 3, 1978.

**3.** The Fourth Circuit has ruled that 42 U.S.C.A. § 7607 (West Supp.1977) does not vest jurisdiction in the courts of appeals to entertain petitions for review of "determinations made during the course of the agency's operations as to how its regulations will be interpreted and ap-

plied." *PPG Industries, Inc. v. Harrison*, 587 F.2d 237, 244 (4th Cir. 1979). Because that case did not concern, and its reasoning did not reach, rulemaking under 5 U.S.C. § 553, it has no application here.

**4.** The Administrator missed the statutory deadline of February 3 for review of the state designations as noted *supra* n.2.

*American Iron & Steel Institute v. EPA,* 568 F.2d 284, 292 (3d Cir. 1977), we must coordinate the commands of the APA and those of the Clean Air Act. In enacting amendments to the Clean Air Act, Congress gave no explicit indication that it intended to override the procedural safeguards of the APA. The amendments set the December 5, 1977, deadline for submission of state designations, the February 3, 1978, deadline for the Administrator's review, and the January 1, 1979, deadline for state implementation plans. Even at the time when Congress passed the amendments to the Clean Air Act, the circumstances that the Administrator advances as good cause should have been apparent. Nonetheless, Congress nowhere recorded any express indication that the 1977 amendments should relieve the Administrator from the ordinary procedures set forth in the APA for rulemaking.

█ It may be that the absence of an express Congressional intent to forego notice and comment does not absolutely prove an implicit intent to maintain those procedures and does not, therefore, settle beyond doubt the issue of good cause. We cannot, however, accept the Administrator's protestations that the statutory schedule precluded prior notice and comment. The Administrator received the Pennsylvania designations on December 5, 1977. As the Administrator informed this court, he modified state designations only when they were clearly incorrect.[5] The Administrator should have been able to publish the Pennsylvania designations within ten days after December 5, 1977, offering them not as a final rule but as a proposed rule. The APA provides that notice of rulemaking shall include "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3) (1976). Because the Administra-

tor subjected Pennsylvania's designations to a review only for clear errors, the state's submission was likely to constitute the final rule, and its publication, at the least, would have given a "description of the subjects and issues involved" in the rulemaking.

Under the circumstances here, we conclude that the period for comments established by the APA would have run by January 15, 1978. If the Administrator took about ninety days to review the comments,[6] he could have issued a final rule on about April 15, 1978, instead of the March 3 date he achieved without notice and comments.[7] The states would then have had until January 1, 1979, in which to draft their plans. Although this period would be about one month less than the time that the Administrator was able to give the states, the period should still have been adequate. First, the states would then have known with certainty the content of the final rule, but under the procedure used by the Administrator the final rule issued March 3 was subject to change after a sixty-day period for comments following promulgation. Second, because the Administrator was largely fashioning his own designations according to the designations submitted by the states, the states (on the assumption they knew of this fact) could have begun as early as December 5 to draft their plans for attaining the national standards. From their own submissions, the states could have predicted the content of the Administrator's final rule, which would incorporate substantially all of their designations.

The Administrator argues that even if he should have allowed notice and comment, the sixty-day period for comments *after* the rule was issued rendered his procedural violation harmless. He further contends that the companies suffered no harm because the designations were only for the benefit of the states in creating implementation

---

5. We express no opinion whether the Clean Air Act mandates a more stringent review than the Administrator undertook.

6. The Administrator actually took about 120 days to review the comments received during the sixty-day period after promulgation.

7. If the Administrator issued the rule on April 15, he would have missed the statutory deadline of February 3. But the promulgation on March 3 also violated that deadline.

plans. Although companies in non-attainment areas labor under significant burdens in gaining licenses to construct or modify their plants,[8] the Administrator contends that the designations declared by his rule will not be binding when the companies apply to the Environmental Protection Agency or Pennsylvania for licenses to build or modify facilities. At the time of their applications, the companies will be free to show that these four areas should be classified as "attainment" and that the most stringent requirements of the Clean Air Act therefore do not apply.

■ We hold that the period for comments after promulgation cannot substitute for the prior notice and comment required by the APA. If a period for comments after issuance of a rule could cure a violation of the APA's requirements, an agency could negate at will the Congressional decision that notice and an opportunity for comment must precede promulgation. Provision of prior notice and comment allows effective participation in the rulemaking process while the decisionmaker is still receptive to information and argument. After the final rule is issued, the petitioner must come hat-in-hand and run the risk that the decisionmaker is likely to resist change. See Maryland v. EPA, 530 F.2d 215, 222 (4th Cir. 1975), vacated and remanded on other grounds, 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977).

■ Nor is the procedural violation harmless on the ground that the challenged designations will not be conclusive as to any applications by the companies to build or modify plants. The air quality standards obviously will have a serious impact upon steelmaking facilities, the operation of which emits pollutants into the atmosphere. The designations fixed by the Administrator evidently will have some weight, even if they will not be dispositive.[9] Moreover, the uncertainty about what weight these designations will carry in future proceedings may influence the companies' current plans for construction. The Administrator's failure to abide by the APA, we conclude, was not harmless.

### III.

■ In hearing a petition for review, a court of appeals may exercise equitable powers in its choice of a remedy, as long as the court remains within the bounds of statute and does not intrude into the administrative province. *Indiana & Michigan Electric Co. v. FPC*, 163 U.S.App.D.C. 334, 344, 502 F.2d 336, 346 (1974) (opinion on rehearing). *See Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939). Although the companies are entitled to relief, we must be careful not to grant relief so broad as to endanger the Congressional scheme for the control of air pollution.

■ Following the example of *Duquesne Light Co. v. EPA*, 481 F.2d 1, 10 (3d Cir. 1973), we leave the challenged rule in effect except as to the specific designations contested in this case and as applied to these two petitioners alone. None of the Pennsylvania designations other than the four here involved will be in any way disturbed. At the same time, basic fairness requires that Sharon and Bethlehem be restored, as nearly as possible, to the position they would have occupied if the Administrator had afforded them their rights to prior notice and an opportunity for comment. We therefore remand to the Administrator, with the direction that the Administrator shall forbear from applying to Sharon and Bethlehem any of the requirements or sanctions imposed on non-attainment areas by

---

8. The applicant must show, for example, that after construction or modification the total of emissions in the area will actually *decrease*. 42 U.S.C.A. § 7503(1)(A) (West Supp.1977) (emission offsets). The applicant must also demonstrate compliance by *all* sources in other plants it owns and operates in the state. 42 U.S.C.A. § 7503(3).

9. At oral argument, counsel for the Administrator characterized a non-attainment designation as a "working hypothesis," which an applicant for a construction permit "will have every opportunity to rebut."

382

the 1977 amendments to the Clean Air Act until the Administrator shall have conducted a limited legislative hearing in which he gives these two companies the required statutory notice and opportunity for participation and comment as provided by the APA, 5 U.S.C. § 553 (1976).

## IV.

The companies have moved to supplement the record in this case by adding an internal memorandum written by a lawyer in the Environmental Protection Agency. This memorandum, the companies argue, shows that the Administrator was aware of possible legal problems in his decision to dispense with prior notice and comment. Because counsel for the Administrator conceded at oral argument that the Administrator had forewarning of these possible problems, it would be redundant to supplement the record, and the motion will be denied.

The petition for review will be granted and the case will be remanded to the Administrator for proceedings not inconsistent with this opinion. Costs taxed to the respondent.