633 F.2d 803
 15 ERC 1487, 10 Envtl. L. Rep. 20,985
 WESTERN OIL AND GAS ASSOCIATION, a nonprofit corporation;
California Independent Producers Association, a nonprofit
corporation; Chevron U.S.A. Inc., a corporation; Getty Oil
Company, a corporation; Mobil Oil Corporation, a
corporation; Shell Oil Corporation, a corporation; Sun Oil
Company (Delaware), a corporation; Tenneco Inc., a
corporation; and Union Oil Company of California, a
corporation, Petitioners,
v.
The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency
of the United States; and Douglas M. Costle, in his capacity
as Administrator of the United States Environmental
Protection Agency, Respondents.
 No. 78-1941.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 13, 1980.
Submitted June 10, 1980.
Decided Dec. 1, 1980.
 
 Sharon F. Rubalcava, Gregory R. McClintock, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., argued for petitioners; Christina Kaneen, Los Angeles, Cal., on brief.
 Fred R. Disheroon, Atty., Dept. of Justice, Washington, D.C., for respondents.
 On Petition to Review a Decision of the United States Environmental Protection Agency.
 Before SNEED and SCHROEDER, Circuit Judges, and BURNS*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Petitioners, several oil and gas companies and their trade association, seek direct review of a regulation promulgated by respondent, the EPA, designating certain geographical areas in California as failing to meet federal air quality standards. We hold that our jurisdiction rests on the provision of the Clean Air Act Amendments of 1977, 42 U.S.C. § 7607 (Supp.II 1978), which contemplates judicial review of regionally applicable final agency action, and that the EPA failed to comply with section 553(b) of the Administrative Procedure Act, 5 U.S.C. § 553(b) (1976) (APA). As a consequence, we remand to the EPA to permit it to provide the petitioners another opportunity to comment on the designation and to enable it to receive and consider these comments.
 
 
 2
 * FACTUAL BACKGROUND
 
 
 3
 This case arises from an intermediate step in the enforcement of the Clean Air Act, enacted in 1970, Pub.L.No. 91-604, 84 Stat. 1676 (1970), and substantially amended in 1977, Pub.L.No. 95-95, 91 Stat. 685 (1977). The Act commanded the EPA to formulate air quality standards for a range of pollutants, specifying how much of each pollutant may safely be allowed to stand in the air. 42 U.S.C. § 7409(a) (Supp.II 1978). These standards have long been in force. 40 C.F.R. §§ 50.1-.11 (1980). Originally, the Act set forth what turned out to be an optimistic schedule for the reduction of pollution to safe levels. When the schedule was not met, Congress set new deadlines with the object of realizing the original goals as soon as possible. Pub.L.No. 95-95, 91 Stat. 685 (1977). These new deadlines provided that by December 5, 1977, each state was to submit lists, called attainment status designations, of the regions within that state that met and did not meet the air quality standards on August 7, 1977. 42 U.S.C. § 7407(d) (Supp.II 1978).[1] Submission of attainment status designations was the first step in a statutory scheme to develop programs, called state implementation plans (SIPs), by which each state proposes to bring itself into compliance with the air quality standards in accordance with the statutory schedule. Id. § 7502(a)(1), (2). By February 3, 1978, the EPA was to promulgate the states' proposed attainment status designations, modified as the Administrator deemed necessary. Id. § 7407(d)(2). The states were to take these designations into account in preparing SIPs to be submitted to the agency by January 1, 1979. When approved by the EPA, the SIPs become enforceable federal regulations and require new and existing industry in each state to install whatever equipment is needed to reduce pollution to the scheduled levels. Id. § 7502(b)(2). Private industrial concerns whose plants are sources of pollution must apply for licenses before modifying or constructing new facilities. If a plant is located in a nonattainment area, the applicant must show that his project actually will reduce pollution in that area. Id. § 7503(1)(A).
 
 
 4
 The dispute with which this case is concerned centers on the manner in which the EPA arrived at the attainment status designations for California. Although some states, including California, had submitted proposed designations by the December 5 deadline, the EPA did not notify the public in advance of its intention to adopt these proposals, or solicit public comment as the APA, 5 U.S.C. §§ 551-706 (1976), requires for much "rulemaking." Even so, the EPA missed its deadline and published the designations on March 3, 1978. Then it declared them "immediately effective" and solicited comments with a promise to publish revised designations as appropriate. 43 Fed.Reg. 8962 (1978). The notice also stated:
 
 
 5
 The States are now preparing revisions to their State implementation plans (SIPs) as required by sections 110(a)(2)(1) (42 U.S.C. § 7410(a)(2)(1) (Supp.II 1978)) and 172 of the Act (42 U.S.C. § 7502 (Supp.II 1978)). This enterprise, which must be completed by January 1, 1979, requires that the States have immediate guidance as to the attainment status of the areas designated under section 107(d) (42 U.S.C. § 7407(d) (Supp.II 1978)). Congress has acknowledged this by imposing a tight schedule on the designation process and requiring EPA to promulgate the list within 180 days of the enactment of the amendments. Under these circumstances it would be impracticable and contrary to the public interest to ignore the statutory schedule and postpone publishing these regulations until notice and comment can be effectuated. For this good cause, the Administrator has made these designations immediately effective.
 
 
 6
 Id.
 
 
 7
 Petitioners (WOGA) filed a timely petition for review by this court. WOGA also submitted comments to the agency objecting to the designations. The California State Air Resources Board, which had hastily drafted the designations, also made substantive criticisms during the comment period. On September 1, 1978, the EPA announced that it had received the Board's comments and would allow thirty days for additional public comment. 43 Fed.Reg. 39101 (1978). WOGA took the opportunity to communicate both procedural and substantive objections. Revised attainment status designations for California appeared in the Federal Register on March 19, 1979. 44 Fed.Reg. 16388-91 (1979). Since the petitioners still were not satisfied on substantive grounds, they filed a motion for leave to amend the earlier petition for review, which was granted.
 
 II
 THE ISSUES
 
 8
 As frequently is true in environmental cases, the issues are not simple. We initially confront the question of our jurisdiction to entertain this petition. After concluding that jurisdiction exists, we shall address petitioners' argument that all issues are foreclosed in its favor by reason of the doctrine of collateral estoppel. We reject this contention and then turn to the issue whether the EPA acted contrary to the requirements of the APA. We conclude that it did and this brings us to the vexing question of what, if anything, should be done to remedy this deficiency. After fashioning our response to this question, we reject the petitioners' request that we also review the administrative procedures employed by the California State Air Resources Board in developing the attainment status designations submitted to the EPA.
 
 III
 JURISDICTION
 
 9
 We hold that section 7607 of the Clean Air Act Amendments, 42 U.S.C. § 7607 (Supp.II 1978),[2] confers jurisdiction on this court to review the EPA's promulgation of the California designations. That section transfers to the courts of appeals a wide range of cases that would otherwise be in the jurisdiction of the district courts. These are then divided between the District of Columbia Circuit and all other circuits. The District of Columbia Circuit alone may review "nationally applicable" regulations and final agency actions, of which a number are specified by authorizing sections of the Act. That court also has exclusive jurisdiction to review agency action "based on determinations of nationwide scope or effect," if the action is so designated by the Administrator. The other circuits may hear suits that arise under enumerated sections of the Act within the regions they serve as well as challenges to "any other final action of the Administrator under this chapter ... which is locally or regionally applicable."
 
 
 10
 The California designations were not promulgated as "nationwide in scope or effect." They apply locally, not nationally. Their adoption, however, falls within none of the authorizing sections mentioned in section 7607. Thus, only if the designations constitute "any other final action" of the agency does this court have jurisdiction. In Harrison v. PPG Industries, Inc., 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), the Supreme Court recently held that the doctrine of ejusdem generis does not apply to limit the meaning of "any other" in the phrase "any other final action." A locally applicable final action is therefore reviewable by the appropriate regional court of appeals even if the action is not akin to those described in the authorizing sections set forth in section 7607. Id. at 1896. Thus, we need only decide whether the action we are asked to review was "final." We conclude that it was.[3]
 
 
 11
 In reaching this conclusion we are guided by PPG Industries and Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Although in PPG Industries the Court stressed that the controversy before it was not about whether the action was final (the parties, with the Court's concurrence, agreed that it was, 100 S.Ct. at 1894-95), it did emphasize that short of an enforcement action, the EPA's decision in that case was "its last word on the matter." Id. at 1895. As Justice Stevens noted in his dissent, id. at 1903 n.3, the Court did not feel compelled to scrutinize the action according to the more elaborate tests of Abbott Laboratories. That case established guidelines for determining whether agency action is ripe for judicial review pursuant to section 704 of the APA, 5 U.S.C. § 704 (1976), guidelines that include consideration of finality. Ripeness, according to the understanding of most courts, depends on the combined weight of the issue's "fitness" for judicial resolution and the hardship to the aggrieved party if review is postponed. Wearly v. FTC, 616 F.2d 662, 666 (3d Cir. 1980); Association of National Advertisers, Inc. v. FTC, 617 F.2d 611 (D.C.Cir. 1979); Exxon Corp. v. FTC, 588 F.2d 895, 901 (3d Cir. 1978); Central Hudson Gas & Electric Corp. v. United States Environmental Protection Agency, 587 F.2d 549, 558-59 (2d Cir. 1978); Bankers Life & Casualty Co. v. Callaway, 530 F.2d 625, 631-32 (5th Cir. 1976), cert. denied, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).
 
 
 12
 Without regard to whether Abbott Laboratories imposes requirements in addition to the finality required by section 7607, we hold that the action sought to be reviewed is both "final" and ripe for review. The parties agree that the California designations are the EPA's "last word" on the status of air quality in California. See Harrison v. PPG Industries, supra, 100 S.Ct. at 1895. And, although the designations are an interim step in the overall process of SIP revision, we agree with the Fifth Circuit that their immediate legal consequences support a finding of ripeness. See United States Steel Corp. v. EPA, 595 F.2d 207, 211 (5th Cir. 1979) (U.S. Steel I ). Not only does this case squarely present legal issues that further factual development will not render more concrete, see Abbott Laboratories, supra, 387 U.S. at 149, 87 S.Ct. at 1515, but also the EPA's promulgations are formal and definitive statements of the agency's conclusions. The final promulgation of the March 19, 1979, revisions followed provision of notice and opportunity to comment. Withholding review at this time could result in immediate and substantial consequences for petitioners. See id. at 152-56, 87 S.Ct. at 1517-1520. For example, because California failed to submit its SIP revisions by the statutory deadline, a moratorium that prohibits the construction or modification of major stationary sources of specific pollutants is in effect for nonattainment areas identified by the challenged designations. See 45 Fed.Reg. 31307-12 (1980); 44 Fed.Reg. 38471-73 (1979).[4]
 
 IV
 THE COLLATERAL ESTOPPEL ISSUE
 
 13
 We now turn to the collateral estoppel issue. The petitioners argue that Sharon Steel Corp. v. EPA, 597 F.2d 377 (3d Cir. 1979), the first of many challenges[5] to the March 3, 1978, designations, should collaterally estop the EPA from asserting their validity here. They point out that Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), has given the federal courts discretion to allow "offensive" use of collateral estoppel, which they maintain is appropriate here. We observe that the Fifth, Sixth, Seventh, and District of Columbia Circuits, appraising the challenged promulgations after the decision in Sharon Steel, have not, in reaching their conflicting results, mentioned the possible role of estoppel.[6] We too decline to decide this case on the basis of collateral estoppel.
 
 
 14
 The courts of appeals following dictum in Commissioner v. Sunnen, 333 U.S. 591, 597-600, 68 S.Ct. 715, 719-721, 92 L.Ed. 898 (1948), traditionally have permitted federal agencies to relitigate substantially identical legal issues raised by different transactions or events, after adverse decisions elsewhere. See Vestal, Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies, 55 N.C.L.Rev. 123, 127-29, 140-63 (1977) (survey of circuit application of "controlling decision" doctrine). Moreover, we generally do not consider ourselves bound by the law of other circuits in environmental cases. E. g., Brown v. EPA, 521 F.2d 827, 838 n.45 (9th Cir. 1975). The EPA cites recent Supreme Court dictum approving the practice of agency relitigation, E. I. duPont de Nemours & Co. v. Train, 430 U.S. 112, 135 n.26, 97 S.Ct. 965, 978, 51 L.Ed.2d 204 (1977); Union Electric Co. v. EPA, 427 U.S. 246, 254, 255, 96 S.Ct. 2518, 2524, 2525, 49 L.Ed.2d 474 (1976); Train v. Natural Resources Defense Council, Inc., 421 U.S. 60, 72-75, 95 S.Ct. 1470, 1478-1480, 43 L.Ed.2d 731 (1975), and argues that Parklane Hosiery was not intended to halt it. We agree.
 
 
 15
 In Commissioner v. Sunnen, the Court recognized that collateral estoppel "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." 333 U.S. at 599, 68 S.Ct. at 720. However, if the "legal atmosphere" has changed since the first suit, collateral estoppel is inappropriate. Id. at 600, 68 S.Ct. at 720. Similarly, "if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case." Id. at 601, 68 S.Ct. at 721. See 1B Moore's Federal Practice P 0.448 (2d ed. 1965). These principles are especially important in the context of agency relitigation of legal issues with substantial public policy implications. See 333 U.S. at 599-600, 68 S.Ct. at 720-721.
 
 
 16
 In our view Parklane Hosiery did not overturn these principles. Although the Court approved the "offensive" use of collateral estoppel, it left to the courts "broad discretion to determine when it should be applied," 439 U.S. at 331, 99 S.Ct. at 651, and did not purport to provide an exhaustive list of factors to be considered in making that determination, id. The Sunnen principles continue to provide valuable guidance. See Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).
 
 
 17
 In applying those principles we note that, although this case is factually similar to Sharon Steel, it is sufficiently separable from that case to warrant reexamination of the legal issues. Cf. Segal v. AT&T, 606 F.2d 842, 845 (9th Cir. 1979) ("Issue preclusion has never been applied to issues of law with the same rigor as to issues of fact."). California's designations are separate from those of other states. Moreover, WOGA represents the first group of petitioners to challenge the designations after participating in a post-promulgation comment process. Also the "legal atmosphere" has changed since Sharon Steel. Other courts of appeals have examined the legal issues and have reached differing results. The parties here have devoted much energy to analyzing language in Parklane Hosiery concerning the timing and effect of inconsistent decisions.[7] We do not believe the Court meant to establish an immutable rule governing the timing of inconsistent decisions, and we do not establish one here. Rather, we think the fact of inconsistent decisions is a relevant, but not always dispositive, factor to be considered in the exercise of discretion. We have considered it and conclude that Sharon Steel should not preclude us from considering the reasoning of intervening decisions and deciding this case on the basis of the law as we understand it.
 
 
 18
 Collateral estoppel is not to be applied mechanically. In proper circumstances it can prevent the waste of judicial resources and shield litigants from duplicative and often vexatious lawsuits. As the Supreme Court recently has recognized, however, countervailing policies may justify a refusal to apply principles of estoppel. Standefer v. United States, --- U.S. ----, ---- - ----, 100 S.Ct. 1999, 2007-08, 64 L.Ed.2d 689 (1980); Montana v. United States, supra, 440 U.S. at 162, 99 S.Ct. at 978. See United States v. ITT Rayonier, Inc., 627 F.2d 996, 1000 (9th Cir. 1980). The circumstances of each case must provide the touchstone for decision. We refuse to ignore that five courts of appeals have differed in their judgments concerning the legality of the EPA's conduct.[8]
 
 V
 THE APA ISSUE
 
 19
 Subject to certain exceptions, section 553(b) of the APA requires agencies to give notice of any proposed rulemaking in the Federal Register and to provide an opportunity for public comment. 5 U.S.C. § 553(b) (1976). An exception is allowed if the agency has "good cause" to believe the process would "be impracticable, unnecessary, or contrary to the public interest" and if the agency publishes reasons for thinking so along with the rules in question. Id. It is on this exception the EPA exclusively relies. It contends that the statutory deadlines were pressing enough to constitute good cause. The agency also hints at a broader reinterpretation of the APA by quoting the Supreme's Court's troubling dictum in Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978): "Absent constitutional or extremely compelling circumstances the 'administrative agencies' should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." See 1 K. Davis, Administrative Law Treatise §§ 6.35, .36, .37, at 605-16 (1978). WOGA argues that the mere existence of statutory deadlines does not justify using the emergency procedure and that the EPA could have allowed prepromulgation comment without jeopardizing the objectives of the Clean Air Act.
 
 
 20
 The Third, Fifth, and District of Columbia Circuits have held the "good cause" exception inapplicable and have rejected the EPA's argument that a request for comments after promulgation was a viable substitute for the statutory procedure. New Jersey v. United States Environmental Protection Agency, 626 F.2d 1038 (D.C.Cir. 1980); U. S. Steel I, supra; Sharon Steel, supra. The Sharon Steel court found that because Congress fixed all the deadlines applicable to promulgating the designations and failed to delete the notice and comment requirement, the EPA did not have good cause to short-cut the procedure, particularly since notice and comment would have delayed the first promulgation of the designations by only two months. 597 F.2d at 379. The statutory deadline for state submission of attainment and nonattainment area designations was December 5, 1977, which was met by both Pennsylvania, the state involved in Sharon Steel, and California. The court commented:
 
 
 21
 The Administrator should have been able to publish the Pennsylvania designations within ten days after December 5, 1977, offering them not as a final rule but as a proposed rule. The APA provides that notice of rulemaking shall include "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3) (1976). Because the Administrator subjected Pennsylvania's designations to a review only for clear errors, the state's submission was likely to constitute the final rule, and its publication, at the least, would have given a "description of the subjects and issues involved" in the rulemaking.
 
 
 22
 ... If the Administrator took about ninety days to review the comments, he could have issued a final rule on about April 15, 1978, instead of the March 3 date he achieved without notice and comments. The states would then have had until January 1, 1979, in which to draft their plans. Although this period would be about one month less than the time that the Administrator was able to give the states, the period should still have been adequate.
 
 
 23
 Id. at 380 (footnote omitted).
 
 
 24
 In U. S. Steel I, the Fifth Circuit observed that inasmuch as the EPA published lists of attainment status designations as the states submitted them and purported to change them only where necessary, 42 U.S.C. § 7407(d)(2) (Supp.II 1978), the states had a fair idea of the designations pertinent to their SIP revisions even before the EPA made the designations "effective." U. S. Steel I, supra, 595 F.2d at 214. The EPA itself acknowledged that, even as adopted, the designations were tentative and subject to change.
 
 
 25
 We agree with the reasoning of the Third and Fifth Circuits. We find unconvincing the grounds employed to reach a different result in United States Steel Corp. v. United States Environmental Protection Agency, 605 F.2d 283 (7th Cir. 1979), cert. denied, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980) (U. S. Steel II ).[9] In that case the Seventh Circuit was persuaded, first, that good cause justified dispensing with notice and comment, and second, that the Clean Air Act provides a broader exemption for the EPA than is available pursuant to the APA. The Seventh Circuit held that subsections (b)(B) and (d) (3) of section 553 create two distinct "good cause" exceptions to the notice and comment requirement.[10] Id. at 286. The court reasoned that the Clean Air Act deadlines satisfied the "impracticability" requirement of subsection (b)(B) and unquestionably constituted "demonstrable urgency," which the court believed characterized the less demanding standard of subsection (d)(3). Id. at 286-87. The court rested its findings on evidence of urgency contained in the legislative history of the Act. Id. at 287-88.
 
 
 26
 The Seventh Circuit also found support for its result in section 7607(d) of the Clean Air Act, which establishes standards of judicial review and reads as follows: "In the case of review of an action of the Administrator to which this subsection applies, the court may reverse any such action found to be ... without observance of procedure required by law" if (1) the "failure to observe such procedure is arbitrary and capricious," (2) objection was made during the period for public comment, and (3) the procedural errors "were so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made." 42 U.S.C. § 7607(d)(9) (Supp. II 1978). The court found that "Congress meant this limitation on review of procedural errors to extend to all rulemaking by the EPA whether or not it is in the explicit categories covered by the provisions of section 7607(d)."[11] 605 F.2d at 290-91 (emphasis added).
 
 
 27
 We cannot agree. First, we find unconvincing the assertion that section 553(d)(3) provides an alternative good cause exception from the notice and comment requirement. Subsection (d) requires publication of rules not less than thirty days prior to their effective date and then provides a good cause exception in subsection (d)(3). Before that exception becomes relevant, however, the agency must first justify abandoning the requirement of prior notice and comment pursuant to subsection (b)(B). If the EPA fails to do so the rule is in violation of the APA and the good cause exception of (d)(3) cannot save it. Since we hold that the EPA's action is not justified according to subsection (b)(B), the question whether the decision to make the promulgation effective with publication satisfies subsection (d)(3) need not be addressed. We cannot accept the view that the EPA's action as a whole can be justified under either of the good cause exceptions. Accord, New Jersey, supra, 626 F.2d at 1048-1049.
 
 
 28
 Second, we reject the idea that section 7607(d) applies to judicial review of the EPA's actions authorized by section 7407(d)(2). Section 7607(d) meticulously enumerates a list of actions to which its substantive provisions apply and expressly abrogates the review provisions of the APA only with respect to those actions. 42 U.S.C. § 7607(d)(1) (Supp.II 1978). Section 7407(d)(2) is not one of the enumerated provisions and an extension of section 7607(d) to cover it is not within our power. In this case, section 553(b)(B) remains the sole standard by which the EPA's action is to be judged.
 
 
 29
 We agree with the Third, Fifth, and District of Columbia Circuits that the EPA has failed to justify its action under section 553(b)(B). This court has applied the good cause exception only once, and then in a case in which good cause was evident. Arizona State Department of Public Welfare v. Department of Health, Education, and Welfare, 449 F.2d 456, 480-81 (9th Cir. 1971). The EPA has argued before this Court for a blanket exemption for agencies operating under pressure of statutory deadlines. Such an interpretation of "good cause" would amount to judicial legislation. The urgency of the problem to be remedied does not justify the repeal by this court of the notice and comment requirement. Moreover, as the Third Circuit pointed out, see Sharon Steel, supra, 597 F.2d at 379, there was time within which the process could have worked. It is unlikely that the EPA's action gave California any more secure and timely basis for planning than would have been available had the EPA followed required procedures. Indeed, the only advantage to be gained-compliance with the statutory deadlines-was not achieved.[12] Under these circumstances we hold that the agency's promulgation of the designations without prior notice and comment violated the APA.
 
 VI
 THE REMEDY ISSUE
 
 30
 We now come to what for us is the most difficult issue of all-what the remedy should be. WOGA, on the one hand, suggests, not that the existing designations be declared invalid, but rather that the entire process of preparing the designations be repeated strictly in accordance with state and federal procedure, and that the EPA be ordered to substitute the resulting new designations for the present ones when the process is complete. The EPA, on the other hand, argues that even if there was a violation of APA requirements the petitioners' substantive injuries, if any, could have been, and therefore must be deemed to have been, made whole during the post-promulgation comment period.
 
 
 31
 "Certainly regulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory procedural minimum found in that Act." Chrysler Corp. v. Brown, 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979). This is a reasonable corollary of the Court's recent emphasis on the limited scope of judicial review of agency action. See Costle v. Pacific Legal Foundation, 445 U.S. 198, 214-16, 100 S.Ct. 1095, 1105-06, 63 L.Ed.2d 329 (1980); Chrysler Corp., supra, 441 U.S. at 312-13, 99 S.Ct. at 1723; Vermont Yankee, supra, 435 U.S. at 556-57, 98 S.Ct. at 1218. When substantive judgments are committed to the very broad discretion of an administrative agency, procedural safeguards that assure the public access to the decisionmaker should be vigorously enforced. This we believe is sound policy. We therefore reject the agency's argument.
 
 
 32
 A further corollary of Vermont Yankee, Chrysler, and Pacific Legal Foundation is that relief for agency procedural error should be a strict reconstruction of procedural rights.
 
 
 33
 In Vermont Yankee, we recognized that the APA is " 'a formula upon which opposing social and political forces have come to rest.' " ... (C)ourts are charged with maintaining the balance: ensuring that agencies comply with the "outline of minimum essential rights and procedures" set out in the APA.
 
 
 34
 Chrysler Corp., supra, 441 U.S. at 313, 99 S.Ct. at 1723. The proper remedy, therefore, is a reenactment of the deliberative process with correct provision for the petitioners' participation.
 
 
 35
 Whether to leave the challenged designations in effect during reenactment of the deliberative process is a difficult question. Ordinarily a failure to comply with the APA requirements of prior notice and comment would invalidate such designations. Federal Power Commission v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976); Camp v. Pitts, 411 U.S. 143, 144, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). We are reluctant to so hold under the circumstances of this case. Our hesitancy springs from a desire to avoid thwarting in an unnecessary way the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted. We are also influenced by the possibility of undesirable consequences which we cannot now predict that might result from invalidation of the designations. Our intervention into the process of environmental regulation, a process of great complexity, should be accomplished with as little intrusiveness as feasible. Under the unusual circumstances of this case and guided by authorities that recognize that a reviewing court has discretion to shape an equitable remedy, we leave the challenged designations in effect. See Ford Motor Company v. NLRB, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1939); Sharon Steel Corporation v. EPA, 597 F.2d 377 (3d Cir. 1979); Rodway v. U. S. Dept. of Agriculture, 514 F.2d 809 (D.C.Cir. 1975); Indiana and Michigan Electric Co. v. FPC, 502 F.2d 336 (D.C.Cir. 1974), cert. denied, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975); Duquesne Light Co. v. EPA, 481 F.2d 1 (3d Cir. 1973), vacated on other grounds, 427 U.S. 902, 96 S.Ct. 3185, 49 L.Ed.2d 1196 (1976).
 
 
 36
 We remand to the Administrator with instructions that he provide these petitioners, who have timely filed for review according to 42 U.S.C. § 7607 (Supp.II 1978), with an opportunity to comment on the California designation. The EPA is to consider and act on these comments in accordance with 42 U.S.C. § 7407(d) (Supp.II 1978). Any revisions will then be substituted for the existing designations. We believe that this remedy best accounts for the injury suffered by petitioners while minimizing any frustration of the purposes of the Clean Air Act Amendments of 1977.
 
 VII
 THE CALIFORNIA PROCEDURES ISSUES
 
 37
 Petitioners, in their request that we review the procedures used by California in developing the attainment status designations submitted to the EPA, argue that unless this court reviews the alleged state procedural errors they will escape review entirely. This is so, they insist, because the first official notice of the preparation of attainment status designations occurred when the EPA issued its final promulgations. At that time, the only available method of review of procedural or substantive errors was by petition to this court.[13]
 
 
 38
 Whether or not the California State Air Resources Board (ARB) violated state law, we may consider that issue only if it is relevant to our review of the Administrator's promulgation of the attainment status designations. The California agencies are not parties to this litigation and the petitioners do not identify any other jurisdictional basis for directly reviewing state procedural inadequacies. Thus, the only issue that can be before us is whether the Administrator of the EPA abused his discretion by promulgating the designations despite the alleged state procedural errors. We hold he did not.
 
 
 39
 Section 7407(d) of the Act requires the states to propose attainment designations. The Administrator is then to promulgate the list "with such modifications as he deems necessary." 42 U.S.C. § 7407(d)(2) (Supp.II 1978). Section 7407(d) requires no specific procedural responsibilities of the states in developing their recommended designations, nor does it expressly authorize the Administrator to review the procedures actually used for compliance with state law. That section is in sharp contrast to section 7410, governing the development of SIPs, which imposes specific procedural responsibilities on the states and requires the Administrator to ensure that those responsibilities have been met. Id. § 7410(a). Had Congress intended to impose similar requirements in section 7407, we believe it would have said so. The promulgation of attainment designations is a responsibility required of the Administrator by federal law and he is not bound by the procedural requirements of state law in carrying out his duties. Accordingly, we refuse to compel the Administrator, on remand, to review the California designations for compliance with California law. State law must provide the remedy petitioners seek.[14]
 
 
 40
 Remanded.
 
 
 
 *
 Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Satisfactory regions are called attainment areas. Unsatisfactory regions are called nonattainment areas. It was foreseen that some regions would be unclassifiable because of incomplete information. 42 U.S.C. §§ 7407(d)(1), 7501(2) (Supp.II 1978)
 
 
 [2]
 Section 7607(b)(1) provides:
 A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title, any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5) of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412(c) of this title, under section 7413(d) of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise. (Emphasis added)
 
 
 [3]
 This court implicitly found final action within the meaning of section 7607 in one previous instance. Montana Power Co. v. EPA, 608 F.2d 334 (9th Cir. 1979). With the exception of United States Steel Corp. v. EPA, 595 F.2d 207 (5th Cir. 1979) and PPG Industries, which we discuss below, we know of no other finality determination by a court of appeals under section 7607 in its amended form
 
 
 [4]
 The moratorium is to remain in effect until the EPA approves California's revision of its SIP. This court recently affirmed a district court's denial of a temporary injunction against the EPA's enforcement of the moratorium. Pacific Legal Foundation v. Costle, 627 F.2d 917 (9th Cir. 1980)
 The EPA asserted at oral argument that WOGA lacks standing to bring this suit because it has failed to demonstrate that it will be affected by the construction moratorium or other collateral effects of nonattainment designation. We conclude, however, that the EPA unlawfully deprived WOGA of the opportunity for prepromulgation comment. This deprivation was injury sufficient to confer standing.
 
 
 [5]
 WOGA states in its opening brief that at least 43 challenges have been filed in ten of the eleven circuits
 
 
 [6]
 The Fifth and District of Columbia Circuits have agreed with the result in Sharon Steel. New Jersey v. United States Environmental Protection Agency, 626 F.2d 1038 (D.C.Cir. 1980); United States Steel Corp. v. EPA, 595 F.2d 207 (5th Cir. 1979) (U.S. Steel I ). The Sixth and Seventh Circuits have ruled in favor of the EPA. Republic Steel Corp. v. Costle, 621 F.2d 797 (6th Cir. 1980); United States Steel Corp. v. United States Environmental Protection Agency, 605 F.2d 283 (7th Cir. 1979), cert. denied, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980) (U.S. Steel II )
 
 
 [7]
 The Court decided that applying collateral estoppel in Parklane Hosiery would not be unfair to the petitioners, in part because the earlier decision that constituted the basis for estoppel "was not inconsistent with any previous decision." 439 U.S. at 332, 99 S.Ct. at 652. The petitioners here argue that estoppel is appropriate because Sharon Steel is not inconsistent with any prior decision; indeed, no prior decision existed. The EPA argues that Parklane Hosiery approved the offensive use of collateral estoppel only when no other decision, regardless of timing, is inconsistent with the decision relied upon for estoppel
 At the time this case was argued, three courts of appeals had decided the question of the EPA's failure to provide prior notice and comment. Sharon Steel (decided April 25, 1979) and U. S. Steel I (decided May 3, 1979), both favorable to challengers of the designations, were followed by U. S. Steel II (decided August 1, 1979), which was favorable to the EPA. See note 6 supra.
 
 
 [8]
 Our conclusion is not inconsistent with that reached in United States v. ITT Rayonier, Inc., 627 F.2d 996 (9th Cir. 1980). There we held that EPA was estopped from relitigating issues determined in favor of ITT in a prior state court action. As Judge Wright noted, "(o)f the prerequisites for application of collateral estoppel, identity of the parties is the only challenged element. The EPA contends it was neither a party nor privy to the prior state court action." Id. at 1002. In this case, however, changed legal and factual conditions pose the barrier to application of estoppel. We do not hold that an agency may never be bound by a prior determination
 
 
 [9]
 The EPA has not specifically relied on the arguments of the Seventh Circuit that we address in the text. However, it has commended that case to us and we feel obliged to consider its reasoning
 
 
 [10]
 Section 553(b)(B) provides that prior notice and comment may be dispensed with "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." Subsection (d)(3) states that "(t)he required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except ... as otherwise provided by the agency for good cause found and published with the rule."
 
 
 [11]
 The Sixth Circuit, which agreed with the Seventh on the propriety of the EPA's omitting prepromulgation notice and comment, implicitly rejected this aspect of the Seventh Circuit's reasoning. Republic Steel, supra, 621 F.2d at 804-805 & n.2
 
 
 [12]
 The EPA promulgated the original list of area designations on March 3, 1978, one month after the statutory deadline. At the same time it gave notice of the post-promulgation period for receipt of comments and the possibility of further revisions. The modified list of attainment status designations for California did not appear until March 19, 1979. While this extensive period of post-promulgation review offers some support for the EPA's argument that the petitioners have suffered no harm from the initial promulgation, it detracts from the EPA's argument that its expedited promulgation facilitated California's preparation of SIP revisions
 
 
 [13]
 The petitioners argue that this is the effect of 42 U.S.C. § 7607 (Supp.II 1978), which authorizes exclusive review of final actions in the appropriate court of appeals
 
 
 [14]
 The petitioners do not explain why the State's submission of the attainment status designations to the EPA terminated any possibility of relief in the state courts. While § 7607 appears to provide the exclusive method for judicial review of the Administrator's promulgation, we see no reason why this should affect the petitioners' rights under state law to challenge the ARB's preparation of the area designations it submitted to the EPA. In fact, § 7407 specifically provides for the states' revision of their original attainment status lists. 42 U.S.C. § 7407(d)(5) (Supp.II 1978)