**LONE STAR CEMENT CORPORATION,**
Appellant,

v.

The **FEDERAL TRADE COMMISSION,**
**Paul Rand Dixon, Philip Elman, A. Everette MacIntyre, John R. Reilly,** Individually and as members of the Commission, Appellees.

No. 19458.

United States Court of Appeals
Ninth Circuit.
Dec. 8, 1964.

Herbert S. Little, Little, Gandy, Stephan, Palmer & Slemmons, Seattle, Wash., William L. McGovern, Robert E. Herzstein, Melvin C. Garbow, Arnold, Fortas & Porter, Washington, D. C., Chadbourne, Parke, Whiteside & Wolff, New York City, for appellant.

William H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum, Donald L. Hardison, Attys., Dept. of Justice, Washington, D. C., James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Harold D. Rhynedance, Jr., J. Lane Morthland, Attys., Federal Trade Comm., Washington, D. C., for appellees.

Before ORR, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

This appeal is from an order entered in a suit for injunctive and declaratory relief arising out of a pending administrative proceeding entitled In the Matter of Lone Star Cement Corporation, F.T.C. Docket No. 8585. The order was favorable to the defendant, Federal Trade Commission,[1] and plaintiff, Lone Star Cement Corporation (Lone Star), brought the appeal.

The administrative proceeding was commenced by the Commission on July 15, 1963, to determine whether Lone Star has acquired the assets and stock of other corporations in violation of section 7 of the Clayton Act (Act).[2] Lone Star is one of the three largest producers and sellers of portland cement in the United States. The acquisitions complained of were

---

1. The individual members of the Federal Trade Commission were also made defendants, but we will refer to the Commission as if it were the only defendant and appellee.

2. 38 Stat. 731 (1914), as amended, 15 U.S.C. § 18 (1958).

made on December 1, 1959 and August 15, 1962, when Lone Star acquired, respectively, all of the outstanding capital stock of Pioneer Sand and Gravel Co. (Pioneer), and all of the assets of Southern Materials Co., Inc. (Southern Materials).

Southern Materials is engaged in the business of manufacturing and selling ready-mixed concrete in the Norfolk, Virginia, Richmond, Virginia and Jacksonville, Florida areas.[3] Pioneer is engaged in a similar business in the Seattle, Washington area. The Commission alleged in its complaint that the effect of these acquisitions may be substantially to lessen competition or tend to create a monopoly in one or both of two lines of commerce: (1) the manufacture and sale of portland cement; and (2) the manufacture and sale of ready-mixed concrete.

During the administrative prehearing discovery and investigation in Docket No. 8585, two facts developed which led Lone Star to conclude that one engaged in the business of manufacturing and selling ready-mixed concrete in the Seattle area does not, and cannot, ship ready-mixed concrete from a plant in the Seattle area to a point outside the state of Washington. One of these facts is that, because of the unique physical characteristics of ready-mixed concrete and the technical difficulties and costs of transporting it, the area of its sale is necessarily limited to approximately fifteen to twenty miles from a mixing plant. The other fact is that Seattle has a mid-state location which is far more than twenty miles from any border of the state of Washington.

On the basis of these facts and the conclusion drawn therefrom by Lone Star, it moved the hearing examiner, on December 27, 1963, to dismiss those portions of the administrative complaint dealing with the ready-mixed concrete business in the Seattle area. Specifically, the company urged, by reason of the facts referred to above it is conclusively established that the manufacture and sale of ready-mixed concrete in the Seattle area is not interstate commerce and therefore is not a "line of commerce" subject to federal regulation under section 7 of the Clayton Act.

The motion which was opposed by counsel for the Commission was denied by the hearing examiner on January 17, 1964. Such denial was without prejudice to renewal of the motion at the conclusion of the Commission's presentation of its case, the hearing examiner holding that there was no record on which to make a judgment as to the interstate or intrastate character of Pioneer's business. Pursuant to section 3.20 of the Commission's rules, 16 C.F.R. § 3.20 (1964 Supp.), Lone Star applied to the Commission for leave to file an interlocutory appeal from the hearing examiner's ruling. In this application Lone Star cited Page v. Work, 9 Cir., 290 F.2d 323, in support of its view that, under the facts, the Commission was without jurisdiction as to the indicated part of the Docket No. 8585 investigation.[4] The application was opposed by counsel for the Commission.

On February 7, 1964, the Commission denied the application, stating four grounds for this action: (1) the ques-

3. Ready-mixed concrete is a heavy plastic mixture of portland cement, sand, gravel and water which is delivered to a job site in a mixer truck and placed in forms where upon drying it hardens into concrete.

4. In Page, the court affirmed a summary judgment for defendants in an action for damages for asserted violations of the Sherman Antitrust Act and the Clayton Act, including section 7 of the latter act. It was held that, under the facts, the adverse competitive effect of an acquisition upon the local legal advertising business of a newspaper was not violative of section 7, 15 U.S.C. § 18. The court said, in part (at page 333–334):

"In our view, the language of Section 18 in no way indicates that Congress intended to apply the provisions of that Act to purely local activities wholly directed to a local intrastate market and relating to a product not in the flow of interstate commerce and where the effects on interstate activities in which the parties engage are insubstantial, inconsequential and fortuitous, if not non-existent."

tion of law sought to be raised by Lone Star, namely, whether a relevant "line of commerce" under section 7 must be a line of interstate commerce, had already been resolved in Foremost Dairies, Inc., F.T.C. Docket No. 6495, decided April 30, 1962,[5] it being there held that adverse competitive effects resulting from the activities of interstate companies are within the scope of section 7, whether such effects be local or interstate; (2) in view of the statement by Commission counsel that the question of whether the manufacture or sale of ready-mixed concrete in the Seattle area involves interstate commerce remains to be litigated, the appeal may be premature; (3) Lone Star has failed to show the existence of extraordinary circumstances where an immediate decision by the Commission is clearly necessary to prevent detriment to the public interest, such a showing being required to warrant the granting of an interlocutory appeal to the Commission; and (4) allowance of an interlocutory appeal would serve to delay, rather than to expedite, the disposition of the administrative proceeding.

In the meantime, in the course of prehearing proceedings, the Commission's complaint counsel had supplied Lone Star with a list of witnesses to be called by complaint counsel at the administrative hearings. Among those listed were nineteen individuals connected with fourteen companies engaged in the local ready-mixed concrete business in or around the Seattle area. Counsel for the Commission desired to question these witnesses for the purpose of proving that the acquisition of Pioneer by Lone Star may have the effect of substantially lessening competition in either (1) the manufacture and sale of portland cement or (2) the manufacture and sale of ready-mixed concrete, or both. On January 28, 1964, the Commission granted leave to hold hearings in Seattle for the purpose of receiving the testimony of these witnesses.

While a date for these Seattle hearings was not set at that time, Lone Star believed that such hearings were imminent. It was also convinced that, in view of the Commission order of February 7, 1964, the Seattle hearings would, unless enjoined, deal with all phases of the Docket No. 8585 investigation, notwithstanding the company's view that the Commission was without jurisdiction with respect to the ready-mixed concrete phase of the Seattle investigation. As a result, Lone Star, on April 3, 1964, commenced this action in the district court.

In this suit the company seeks to enjoin the Commission from taking any further action in Docket No. 8585 concerning the ready-mixed concrete business in the Seattle area, except to dismiss, by mandate of the court, those portions of the administrative complaint which direct inquiry at that business as a separate line of commerce. The company also seeks the following judicial declarations: (1) that the business of selling ready-mixed concrete in the Seattle area is local business confined to a small area entirely within the state of Washington and is not a line of interstate commerce subject to regulation under section 7 of the Clayton Act; (2) that the proposed Seattle administrative hearings would be unlawful because beyond the jurisdiction of the Commission; and (3) that in authorizing the Seattle hearings to investigate this business, the Commission has violated and proposed to further violate section 9(a) of the Administrative Procedure Act,[6] by imposing sanctions and issuing rules beyond the jurisdiction delegated to the agency and as authorized by law.

At the time of filing its complaint, Lone Star also moved for a preliminary injunction. Proceeding under Rule 12(b), Federal Rules of Civil Procedure, the Commission, on June 1, 1964, moved to dismiss the action for lack of jurisdiction over the subject matter, and for failure to state a claim upon which relief can be

---

5. C.C.H. Trade Reg.Rep. 1961–1963, ¶15,-877, page 20,666 at 20,683.

6. 60 Stat. 242 (1946), 5 U.S.C. § 1008 (1958).

granted. Lone Star countered, on June 10, 1964, with a motion for summary judgment, made pursuant to Rule 56, Federal Rules of Civil Procedure.

Plaintiff's motions for a preliminary injunction and for summary judgment, and defendant's motion to dismiss, were argued together. On July 8, 1964, the district court entered its order disposing of these motions. Lone Star's motions for a preliminary injunction and for a summary judgment were denied. The Commission's motion to dismiss the action was granted.[7] Lone Star appeals from all of these provisions of the order.

■ The provision of the order denying the motion for a preliminary injunction is appealable under 28 U.S.C. § 1292(a) (1). Stell v. Savannah-Chalham County Board of Education, 5 Cir., 318 F.2d 425, 426. The provision of the order granting the motion of the Commission, made under Rule 12, is also appealable. This is true because, under the circumstances, that motion is to be regarded as one for a summary judgment dismissing the action, and the granting of such a motion is a final decision appealable under 28 U.S.C. § 1291.[8] Since consideration of these two features of the order of July 8, 1964, present all of the questions sought to be raised on this appeal, we need not decide whether the provision of that order denying Lone Star's motion for summary judgment is independently appealable.

Arguing for reversal, Lone Star contends: (1) under the decision of this court in Page v. Work, 9 Cir., 290 F.2d 323, and other authorities, the "line of commerce" referred to in section 7 of the Act must be a line of interstate commerce, the result being that acquisitions which lessen competition, or tend to create a monopoly, in a local intrastate business, are not violative of section 7; (2) under the facts referred to above, the business of manufacturing and selling ready-mixed concrete in the Seattle area is not a line of interstate commerce even if some of the cement used in such manufacturing originates outside the state of Washington; (3) for the reasons stated in (1) and (2), the Commission is without jurisdiction to conduct the challenged hearings in Seattle; (4) granting of the relief requested will substantially reduce the complexity of the administrative proceeding and prevent irreparable injury to Lone Star's trade relations with its customers; and (5) in view of the plain unlawfulness of the phase of the investigation in question, and the absence of factual dispute, any need to apply the doctrine of exhaustion of administrative remedies is obviated.

There has as yet been no initial decision of the hearing examiner determining the Commission's jurisdiction to regard the ready-mixed concrete business in the Seattle area as a relevant line of commerce for the purposes of section 7 of the Act. If and when an initial decision is made and filed determining this question or any other matter adversely to Lone Star, the company may appeal therefrom to the Commission pursuant to section 3.22 of the Commission's Rules, 16 C.F.R. § 3.22 (1964 Supp.).

■ It follows that, as to the merits of this jurisdictional question, Lone Star has not exhausted its administrative

---

7. In connection with another provision of this order, granting a temporary stay of the Seattle administrative proceedings in connection with an anticipated appeal by Lone Star from the order of July 8, 1964, the court stated in its order:

"AND IT FURTHER APPEARING as an undisputed fact that ready-mixed concrete is not as such sold or delivered in the Seattle area beyond a radius of fifteen to twenty miles from plants mixing such a product, * * * "

8. In support of its motion to dismiss, the Commission presented matters outside the challenged pleading, namely an affidavit and three documentary exhibits. These matters were not excluded by the court in passing upon that motion. Under Rule 12(b), a motion to dismiss for failure to state a claim upon which relief can be granted is to be treated as one for a summary judgment if matters outside the pleading are presented to and not excluded by the court. Ellis v. Carter, 9 Cir., 291 F.2d 270, 275.

remedies.[9] It therefore may not, at this time, obtain a determination of this jurisdictional question in this court pursuant to the review procedure provided in section 11 of the Clayton Act, 38 Stat. 734 (1914), as amended, 15 U.S.C. § 21 (1958), and it has not sought to do so. Instead in this suit instituted in the district court, the company seeks to impose prior restraint upon the Commission.

 Except in very unusual and limited circumstances, as the District of Columbia Circuit said in Wolf Corp. v. SEC, 115 U.S.App.D.C. 75, 317 F.2d 139, 143, Congress did not contemplate a grant of jurisdiction to the courts to prevent abuse or misuse of administrative power by prior restraint of the exercise of such powers. The courts which have dealt with the problem have discussed various considerations to be taken into account in determining whether, under the circumstances, one may seek court relief against anticipated agency action. Perhaps the standard suggested by Professor Davis in his Administrative Law Treatise, Volume 3, § 20.03, page 69, is as complete and workable as can be stated. It is as follows:

"The key factors are three: extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction.

Unfortunately, each of these three key factors is a variable, and each often calls for a considerable amount of judgment for its proper appraisal.

"A workable standard probably should not go beyond a statement that each of these three factors should be weighed in determining whether or not a court should decide an issue of administrative jurisdiction without requiring exhaustion of administrative remedies." (Footnotes omitted.)

We will first consider the degree of apparent clarity or doubt, on the present record, about the jurisdiction of the Commission to inquire into the anti-competitive effect of the acquisition upon the ready-mixed concrete business in the Seattle area.

The Commission presents reasons why it believes that the ready-mixed concrete business in the Seattle area may be interstate in character notwithstanding the fact that this product is not, and cannot be, transported out of the state after it is produced. The evidence may show, the Commission suggests, a continuous stream of interstate commerce, with portland cement, an important ingredient of ready-mixed concrete, being shipped into Seattle from points outside the state, utilized in the manufacture of ready-mixed concrete, and then, as an ingredient of ready-mixed concrete, delivered to job sites in the local area. If such a

9. This is true notwithstanding the fact that the Commission has apparently three times taken a position contrary to that taken by Lone Star on the question of whether adverse competitive local effects may fall under the ban of section 7 of the Act. See Foremost Dairies, Inc., F.T.C. Docket No. 6495, C.C.H. Trade Reg.Rep., 1961–1963, ¶15,877, page 20,-666, at 20,683, decided April 30, 1962; the first of the four grounds stated by the Commission on February 7, 1964, in these proceedings (Docket No. 8585), for denying the application for an interlocutory appeal herein, in which Foremost Dairies, Inc. was reaffirmed; Ekco Products Co., F.T.C. Docket No. 8122, page 21,895, at 21,901, decided April 21, 1964.

In its final decision herein, the Commission may adhere to its view as heretofore expressed. Or, on further reflection, it may determine that it was in error in its previous rulings construing section 7. Or it may determine that, under the particular facts of this case, the ready-mixed concrete business in the Seattle area is not local in character or that, whether local or not, the acquisition thereof will adversely affect the concededly interstate line of commerce—the manufacture and sale of portland cement. Conversely, the Commission may, in view of all the facts developed at the administrative hearing, determine that there are no adverse competitive effects flowing from Lone Star's acquisition of Pioneer, the result being that no adverse cease and desist order would be entered.

showing is made, the agency asserts, Commission jurisdiction to inquire into this matter will be established, even giving Page v. Work, 9 Cir., 290 F.2d 323, the application for which Lone Star argues.

■ We express no view as to whether such a factual showing can be made, or the significance thereof in determining whether the ready-mixed concrete business in the Seattle area is local or interstate. It is enough to say that we have no warrant, on this record, for saying that the Commission cannot make such a factual showing, or for concluding that the jurisdictional conclusion it would draw therefrom is frivolous. In these circumstances it is fair to conclude that Lone Star's proposition that the Commission is without jurisdiction to inquire into the anti-competitive effect of the acquisition of Pioneer upon the ready-mixed concrete business in the Seattle area is presently not free from doubt, and that the resolution of that doubt involves inquiry into facts not established in the present record.[10]

The Commission seems also to suggest that the facts of this case, when fully developed, may call for a different construction of section 7 of the Clayton Act than was applied in Page v. Work. While we intimate no view as to this, we are not convinced that the Commission should be deprived of the opportunity of developing a factual foundation for such an argument.

We turn now to another factor to be considered in determining whether administrative remedies need be exhausted —the extent of injury Lone Star stands to suffer if it is required to pursue that remedy.

Under the administrative complaint the Commission has unchallenged jurisdiction to inquire into the anti-competitive effect of the acquisition of Pioneer upon the cement line of commerce of Lone Star's competitors in the Seattle area. An affidavit filed by the trial attorney for the Commission advises that even if the anti-competitive effect of the acquisition upon the ready-mixed concrete business in the Seattle area were removed from the proceeding, counsel would still call the nineteen witnesses connected with that business referred to earlier in this opinion. These witnesses, counsel states, would be asked questions relevant to the inquiry into the cement line of business. Counsel has indicated nine lines of inquiry which would be explored through these witnesses.

It would appear from this that if Lone Star is going to be embarrassed in its customer relations with the local ready-mixed concrete businesses in the Seattle area because of the calling of local witnesses, it will suffer that embarrassment whatever decision is now made on the jurisdictional question. Moreover, if inconvenience to these witnesses who are not parties and do not represent parties in this proceeding is an appropriate factor to be considered, the advice supplied by counsel for the Commission indicates that this will occur whatever is now decided concerning agency jurisdiction.

Lone Star, however, reviews the record of prehearing accomplishment in this case for the purpose of demonstrating that all of the evidence relevant to the cement line of commerce has already been elicited and will be the subject of a prehearing stipulation. It also offers to stipulate that if counsel for the Commission were to call these named witnesses to testify, they would testify according to the prior sworn statements which the Commission has already taken from about half of them. Lone Star also asserts that if, as the Commission proposes, an extensive economic survey of the ready-mixed concrete business in the Seattle area is undertaken, a vast and unneces-

---

10. In Page v. Work, 9 Cir., 290 F.2d 323, relied upon by Lone Star, while the jurisdictional question was disposed of on defendants' motion for summary judgment, the relevant facts were fully developed by affidavits, stipulated facts, answers to requests for admissions, interrogatories, depositions, exhibits and oral testimony.

sary increase in the length and expense of the hearings will result and local businessmen will, without justification, be required to reveal the intimate details of their highly-competitive businesses.

■ We cannot, at this time, lay down ground rules as to what questions may or may not be asked of these witnesses with regard to the cement line of business. Nor is there sufficient information in the record before us to warrant the conclusion that these witnesses will not, or need not, be called at all to testify concerning that line of business. Since we must now assume that they may be called for that purpose, such additional prejudice as Lone Star may sustain by reason of further questioning of those witnesses with regard to the effect of the acquisition upon the ready-mixed concrete business is not in the order of irreparable injury.

Lone Star's ready-mixed concrete customers in Seattle can hardly blame that company for any inconvenience or disclosure of information which will result from such an inquiry, considering the facts that the inquiry was initiated by the Commission and that Lone Star has made this effort to bring it to a halt. Nor does the additional burden which such an inquiry will necessarily place upon Lone Star warrant injunctive relief where, as indicated above, the facts to be developed may possibly establish Commission jurisdiction. In any event, these are not the types of injury against which equity ordinarily protects.[11]

Little need be said about the third factor to be considered in testing the necessity of requiring exhaustion of administrative remedies—whether the specialized administrative understanding of the agency is needed in deciding the question of jurisdiction. The full development of the jurisdictional facts may or may not call for specialized administrative understanding, but at least such facts can only be elicited in an administrative proceeding. The proper appraisal of those facts may or may not be promoted by initial agency consideration, but since the facts must be developed in an agency hearing it is only good sense that the agency be the first to evaluate them.

The district court granted summary judgment for defendant because, in the exercise of its discretion, the court concluded that injunctive and declaratory relief should be denied prior to exhaustion of administrative remedies. For the reasons stated above we hold that the district court did not abuse its discretion in so concluding.

Affirmed.

11. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638; Petroleum Exploration, Inc. v. Public Service Com'n, 304 U.S. 209, 221, 58 S.Ct. 834, 82 L.Ed. 1294; Allen v. Grand Central Aircraft Co., 347 U.S. 535, 540, 74 S.Ct. 745, 98 L.Ed. 933; Vapor Blast Mfg. Co. v. Madden, 7 Cir., 280 F.2d 205, 208.