676 F.2d 1317
 17 ERC 1674, 12 Envtl. L. Rep. 20,962
 FRIEDMAN BROTHERS INVESTMENT COMPANY, a partnership, Appellant,
v.
Andrew Lindsay Drew LEWIS, Jr., United States Secretary of
Transportation; Arthur Teele, Administrator of the Urban
Mass Transportation Administration; and the City of
Torrance, a municipal corporation, Appellees.
 No. 81-5478.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 1, 1982.
Decided May 12, 1982.
 
 Michael M. Berger, Fadem, Berger & Norton, Santa Monica, Cal., argued, for appellant; Diane E. Berley, Fadem, Berger & Norton, Santa Monica, Cal., on brief.
 James R. Arnold, Asst. U. S. Atty., Los Angeles, Cal., Michael L. Martinez, Washington, D. C., argued, for appellee; Stuart B. Scudder, Torrance, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before POOLE, and BOOCHEVER, Circuit Judges, and SOLOMON,* District Judge.
 POOLE, Circuit Judge:
 
 
 1
 Appellant Friedman Brothers (Friedman) appeals the district court's dismissal of its action alleging appellees, the Urban Mass Transportation Administration (UMTA) and the City of Torrance, failed to comply with National Environmental Policy Act (NEPA) requirements for issuance of an environmental impact statement (EIS). The district court found that Friedman's claim was not ripe since there had been no final agency action as required by Section 10 of the Administrative Procedures Act (APA).
 
 
 2
 UMTA granted funds to Torrance to acquire Friedman's land for the site of a new bus maintenance depot, and categorically exempted construction and operation of the bus yard from NEPA requirements for the issuance of an EIS. We hold that UMTA's grant of funds and concurrent decision to exempt the project together constituted final agency action under the circumstances, even though formal action to acquire the property by condemnation had not commenced. Accordingly, we reverse.
 
 I. FACTS
 
 3
 Friedman owns an 11.5 acre parcel of land in downtown Torrance, 3.5 acres of which the city plans to acquire for the site of its new transit operations center. The property, one block south of the city's current bus maintenance depot, is bounded on the west by a major thoroughfare, and is zoned for heavy industrial use. Part of the land is vacant and part is leased by an industrial user for a manufacturing facility.
 
 
 4
 The city submitted its initial request for project funding to UMTA in 1975, and informed Friedman of its intention to acquire the land. In June, 1980, UMTA granted the city $819,638.00 to purchase the site and complete design and engineering studies for depot construction, and authorized the city to begin condemnation proceedings. Torrance had not commenced condemnation action nor filed a final application for construction funds when this law suit was initiated.
 
 
 5
 On the basis of information provided by the city, UMTA determined that construction and operation of the bus yard would not entail significant environmental impact. It granted the project a categorical exclusion from further environmental review pursuant to its internal agency guidelines developed in response to a mandate from the Council on Environmental Quality and later codified. See 23 CFR 711.115 (1981). The regulations provide an exclusion for:
 
 
 6
 Construction of new bus storage and maintenance facilities in areas predominately zoned for industry and located on or near an arterial street with capacity adequate to handle anticipated bus traffic.[1]
 
 
 7
 Friedman sought to enjoin the grant of site acquisition funds, claiming that UMTA violated Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(c), by not issuing an EIS.[2] The district court found that the acquisition grant was not final agency action as required by Section 10 of the APA, 5 U.S.C. § 704,[3] and held that judicial review of the adequacy of UMTA's environmental assessment would not be appropriate until the agency approved a construction grant. Accordingly, it dismissed Friedman's claim as unripe.
 
 II. RIPENESS
 
 8
 The ripeness doctrine is designed to prevent premature judicial intervention in uncompleted agency proceedings and to insure that challenged agency decisions have a concrete impact on the parties involved. Abbott Laboratories v. Gardner, 387 U.S. 136, 148-9, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Whether an issue is ripe for judicial determination depends on the combined weight of the question's fitness for adjudication and the hardship to the parties if review is delayed. Pacific Legal Foundation v. State Energy Resources Conservation and Development Commission, 659 F.2d 903, 915 (9th Cir. 1981); Western Oil and Gas Association v. EPA, 633 F.2d 803, 807 (9th Cir. 1980).
 
 
 9
 The aspect of ripeness which chiefly concerns us here is finality. This case squarely presents legal issues which further factual inquiry will not make more concrete. See Western Oil and Gas, 633 F.2d at 808. UMTA's decision that the bus yard qualified for a categorical exclusion is "final" in that it is the culmination of the agency's administrative procedures and will not be reconsidered at any later date.
 
 
 10
 In Aberdeen & Rockfish R. Co. v. Students Challenging Regulatory Agency Procedures (SCRAP II), 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975), the Supreme Court held that the Interstate Commerce Commission's decision not to issue an EIS in a general revenue proceeding concerning railroad freight rate increases was final agency action despite the interim nature of the proceeding. "When agency or departmental consideration of environmental factors in connection with that 'federal action' is complete, notions of finality and exhaustion do not stand in the way of judicial review of the adequacy of such consideration, even though other aspects of the (action) are not ripe for review." Id. at 319, 95 S.Ct. at 2355.
 
 
 11
 While UMTA has not made a final commitment to fund construction of the bus depot,[4] the agency has spoken its last word on the project's environmental impact. Similarly, although UMTA contended at oral argument that its acquisition grant was a "floating" grant not tied to the purchase of any specific site, the agency has performed all federal actions necessary to enable Torrance to acquire Friedman's land. The agency's memorandum approving the acquisition grant referred to Friedman's parcel, and the categorical exclusion was also site-specific.[5] The city has received the $820,000.00 disbursement and has been authorized to condemn the property. No federal procedural hurdles remain in its way. Since judicial review of the exclusion at this time will not interfere with any ongoing agency decision-making process, it is appropriate now, to provide the earliest possible resolution of the adequacy of UMTA's environmental assessment. See Western Oil and Gas, 633 F.2d at 807-8; American Petroleum Institute v. Knecht, 609 F.2d 1306, 1310 (9th Cir. 1979), aff'g 456 F.Supp. 889 (C.D.Cal.1978).
 
 
 12
 Expediting the resolution of Friedman's challenge will, in addition, serve the interests of all the parties and protect the public interest in environmental quality which NEPA is designed to safeguard. While site acquisition alone will trigger no irreversible, environment-altering activity, and Friedman's claim could be raised when UMTA funds depot construction, the purpose of an EIS is to provide decision makers with the information required to evaluate the environmental impact of their decision before they make it. Trout Unlimited v. Morton, 509 F.2d 1276, 1283 (9th Cir. 1974). The statement should therefore be prepared "at the earliest time prior to the implementation of the proposed action, so that alternative courses of action with less severe environmental consequences can be considered." Friends of the Earth v. Coleman, 518 F.2d 323, 327 (9th Cir. 1975). This is, therefore, the appropriate time to determine whether an EIS is necessary for the bus yard.
 
 
 13
 On remand, the district court will be required to consider the threshold issue whether Friedman has standing to bring a NEPA action before reaching the above merits of its claim.
 
 
 14
 The judgment is reversed and the case is remanded to the district court for renewed proceedings consistent with this opinion.
 
 
 15
 REVERSED.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 UMTA regulations establish three classes of agency decisions for the purpose of complying with Section 102 of NEPA. Class I actions may significantly affect the environment and automatically require an EIS. Class II actions have no significant impact and are categorically excluded from EIS requirements. Class III actions require an Environmental Assessment to determine whether their impact justifies an EIS. The bus storage and maintenance facility exclusion is codified in 23 CFR 771.115(25) (1981). These regulations apply both to the Federal Highway Administration and UMTA; they are incorporated by reference into 49 CFR 622.101. See 45 Fed.Reg. 71977 (1980)
 
 
 [2]
 Section 102(2)(C) requires an agency which makes a "recommendation or report on proposals for legislation and other major federal actions significantly affecting the quality of the human environment" to issue an EIS
 
 
 [3]
 Section 10 provides that:
 Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.
 
 
 [4]
 The district court did not reach the question whether the site acquisition grant constituted a recommendation or proposal for major federal action within Section 102 of NEPA. It would seem that the acquisition grant-the product of a five-year planning effort by the cities of Torrance and Gardena and UMTA-was such a proposal, clearly establishing the agency's intentions to proceed with construction of the depot. See Realty Income Trust v. Eckerd, 564 F.2d 447, 455 (D.C.Cir.1977) (NEPA claims ripe where General Services Administration proposed construction of a federal office building but had not yet chosen a specific site or made any irrevocable funding commitment.)
 
 
 [5]
 The UMTA memorandum contained the following paragraph:
 The project is to be located in central Torrance, approximately 500 feet east of the intersection of Emerald Street and Madrona Avenue. The land to be purchased for the operations/maintenance center is located in the same block as the City maintenance yard. It is under private ownership and is zoned for industrial use.
 The agency's letter declaring the bus depot's categorical exclusion from NEPA's EIS requirements also specifically refers to Friedman's parcel. It is difficult for this court to imagine how UMTA could exclude the project from environmental review without evaluating a specific site.