**UNITED STATES of America, Plaintiff,**

v.

**LOUISIANA–PACIFIC CORPORATION, Defendant,**

and

**Roseburg Lumber Co., Defendant-Intervenor.**

**Civ. No. 81–813–RE.**

United States District Court, D. Oregon.

Aug. 5, 1983.

---

Charles H. Turner, U.S. Atty., Jack G. Collins, Asst. U.S. Atty., Portland, Or., Benjamin P. Schoen, Consumer Affairs Section, Antitrust Div., Dept. of Justice, Washington, D.C., for plaintiff.

Clifford N. Carlsen, Jr., Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for defendant.

Wayne Hilliard, Carrie G. Otey, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant-intervenor.

## OPINION

REDDEN, Judge:

This is another phase of *United States v. Louisiana Pacific Corporation.* In opinions reported at 554 F.Supp. 501 and 554 F.Supp. 504 (D.Or.1982), I have recounted the earlier phases. A brief summary of the procedural history is necessary for an understanding of my rulings.

This is a civil penalty action brought by the United States against Louisiana-Pacific Corporation, (hereafter L–P) for L–P's violation of a divestiture order. In 1978, the Federal Trade Commission (FTC) began an investigation into L–P's acquisition of Fibreboard Corporation. The concerns of the FTC were, in general, the anti-competitive effects of the merger on the wood products industry in the western United States, and especially the prospect of L–P's acquisition of Fibreboard's plant in Rocklin, California, which manufactured medium-density fibreboard (MDF).

By agreements in June 1978 and subsequent steps in February and March 1979, the FTC and L–P reached an agreement on the acquisition of Fibreboard by L–P. That agreement required that the FTC drop its objection to the merger and that L–P divest itself of the Rocklin MDF plant by March 28, 1981.

L–P, however, did not divest the Rocklin plant as agreed. The United States brought this action for an order requiring divestiture and for appropriate civil penalties. *See United States v. Louisiana Pacific Corp.*, 554 F.Supp. 504, 505–507. I found L–P liable for a $4 million dollar civil penalty for noncompliance with the required divestiture. *Id.* at 512.

At about the time of trial L–P announced an agreement, in principle, with Roseburg Lumber Company (Roseburg), under the terms of which L–P would divest the Rocklin plant to Roseburg for $15 million.

The divestiture order gives the FTC the power to approve or disapprove a prospective purchaser of the Rocklin plant. The FTC objective is that the anti-competitive effects of the merger between L–P and Fibreboard be *eliminated* by the Rocklin divestiture and not *recreated* by a subsequent sale of Rocklin to another firm whose holdings in the western wood products field would create an anti-competitive potential. Thus, the divestiture order requires that L–P divest Rocklin, "subject to the prior approval of the [Federal Trade] Commission." The consent order gave the FTC a veto power over a potential purchaser of Rocklin.

Because of L–P's agreement with Roseburg, I did not appoint a trustee to pursue divestiture at the conclusion of the civil penalty phase of this case, *see* 554 F.Supp. at 510, 512. The Roseburg bid was duly forwarded to the FTC for its consideration.

On April 12, 1983, after extensive proceedings in which Roseburg attempted to convince the FTC that its acquisition of Rocklin would not have anti-competitive effects, the FTC denied the petition, "without prejudice." The FTC noted that the acquisition of Rocklin by Roseburg would have potential anti-competitive effects in the western wood products industry, although it might reduce concentration in the field if the relevant market were considered to be nationwide, as opposed to western. The FTC denied Roseburg's bid "without prejudice" because it found that, in light of L–P's inability to mount a successful, good-faith attempt to sell the Rocklin facility during the divestiture period, *see* 554 F.Supp. at 508–510, the appointment of a trustee would be appropriate to generate more complete information as to the number and characteristics of prospective purchasers.

After consideration and briefing of the matter, I decided to appoint a trustee and ordered the parties to submit names of candidates for the position. 569 F.Supp. 1141. On June 3, 1983, I appointed the trustee and delineated his function and powers.

L–P and Roseburg both opposed the appointment of a trustee. L–P urged that it could find prospective buyers without the government's help. Roseburg argued that the FTC should have approved its bid for Rocklin and that the appointment of a trustee was in derogation of its right to immediate acceptance of its bid. In the interim, L–P had also contacted another potential purchaser, Bohemia, Inc., and concluded an agreement to sell Rocklin to Bohemia for approximately $17.5 million. L–P and Bohemia also forwarded this bid to the FTC. On June 28, 1983, the FTC returned the application to L–P, stating that the FTC would not take action on the bid until it received it as well as any other bids from the court-appointed trustee. The FTC, then, has forwarded the Roseburg and Bohemia bids to the trustee for initial consideration. The FTC will consider both when they, as well as all other bids, are forwarded by the trustee at the conclusion of his task.

L–P has filed a motion which seeks reconsideration of the court's Order appointing the trustee. It also seeks approval of the Bohemia bid. Roseburg sought intervention in this proceeding in order to protect *its* bid, and I granted intervention. Roseburg now moves for summary judgment to the effect that the FTC's failure to immediately approve its bid for Rocklin was unlawful. Roseburg seeks an order from this court approving its bid. The FTC opposes the motion and cross-moves for summary judgment that its delay of consideration of the Roseburg bid was proper. L–P argues

that Roseburg's $15 million bid for Rocklin should not be approved, but that Bohemia's $17.5 million bid should be immediately approved, without consideration by the trustee.

I deny L–P's motion for the suspension of the trustee's duties or for reconsideration of his appointment. I deny Roseburg's motion for summary judgment to the effect that the FTC's deferral of consideration of its offer for Rocklin was wrongful. I grant the government's motion to the effect that the FTC's actions are not subject to challenge.

## DISCUSSION

### A. Appointment of Trustee

■ I reject L–P's argument for a suspension of the duties of the trustee. I rely upon the reasons which I set forth in my Opinion of May 3, 1983. The appointment of a trustee is important in this case in order to secure compliance with the consent decree and to protect L–P from further civil penalties for non-compliance with same. The trustee is a third party, whose duties include obtaining offers for Rocklin. As such, the trustee is responsible to the court. The trustee's appointment is necessary because there has never been an attempt to fully gauge the degree of interest in the plant by prospective purchasers. His actions will prevent a repetition of the delays incident to piecemeal consideration of offers, and will ensure that this litigation will end some day.

### B. The Roseburg Bid

Roseburg argues that the FTC's action in not accepting its offer for the plant was wrongful, and that the FTC's refusal to approve that bid until after the trustee can collect other relevant information and expressions of interest is illegal. Roseburg seeks an order from the court directing the FTC to immediately approve Roseburg's bid.

■ Although Roseburg's argument of the issues has been able, there are a number of defects in its position. It seeks review of the FTC's action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.* It is well established, however, that courts will not review agency actions which are not "final" under the APA, *see* 5 U.S.C. § 704, and are not ripe for review. "Judicial intervention in uncompleted administrative proceedings, absent a statutory mandate, is strongly disfavored." *Bakersfield City Sch. Dist. v. Boyer,* 610 F.2d 621, 626 (9th Cir.1979). This principle, often described as the "exhaustion doctrine," applies where an action is not ripe for judicial review because no final adverse action has been taken, because a full factual record is still being generated, or where further agency action could render a challenge moot or result in piecemeal challenges and review. *Association of Nat. Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1156–1157 (D.C. Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980); *accord, S.E.C. v. G.C. George Securities,* 637 F.2d 685, 688 n. 4 (9th Cir.1981); *Lone Star Cement Corp. v. FTC,* 339 F.2d 505, 509–512 (9th Cir.1964); *Stauffer Chemical Co. v. FDA,* 670 F.2d 106 (9th Cir.1982).

■ The doctrine applies here. The FTC has taken no final action with respect to Roseburg's bid. The FTC informed Roseburg that the FTC's interim action was "without prejudice" to further consideration of the Roseburg offer by the trustee and the FTC. The FTC did not rule that Roseburg was ineligible to bid or that its bid should or should not be accepted. It merely ruled that Roseburg should submit its bid to the trustee like other bidders. In essence, the FTC stated that an insufficient factual record was before it, and took steps to insure that such a record was generated. The FTC may, in fact, choose the Roseburg bid as the one it wishes to recommend. The fact that Bohemia has subsequently bid and that its bid would result in a larger payment to L–P, may or may not be important to the consideration of the FTC, trustee, or the court. The extent of any possible anticompetitive effects in the industry may or may not be a determinative or relevant consideration. The consent order requires that L–P divest by a certain date to a

purchaser approved by the FTC. The requirement to divest is unconditional, and there are no limits in the order upon the FTC's discretion in approving or disapproving a particular bid. There is no requirement that a particular price be paid or that the FTC accept the first, the second, or the twenty-third bid proposed by L–P. While as a practical matter the court does expect the FTC and the trustee to state reasons for their ultimate recommendation, at the present stage of the proceedings the agency is still gathering the facts which will make review and decision possible. Clearly a challenge to the FTC's decision to consider the matter further is premature. *See Lone Star Cement, supra,* at 339 F.2d 510–512. The FTC's actions to date are not subject to a valid challenge in this court. *See generally* Davis, *Administrative Law Treatise,* 2nd Ed. 1983, § 26.10; *see also FTC v. Standard Oil of Cal.,* 449 U.S. 232, 239–245, 101 S.Ct. 488, 493–496, 66 L.Ed.2d 416 (1980).

▬ The FTC argues that Roseburg's challenge is not supported by federal jurisdiction. I reject this argument. I allowed Roseburg to intervene in the pending civil penalty action brought by the United States. Jurisdiction over the civil penalty action is provided by 15 U.S.C. § 45(*l*) and 28 U.S.C. § 1345. A claim asserted in such a proceeding by a party other than the United States, arising out of the same operative facts, is also within the federal jurisdiction, if the United States has waived its sovereign immunity, *see State of Washington v. Udall,* 417 F.2d 1310, 1320 (9th Cir.1969); *S.E.C. v. G.C. George Securities, supra,* 637 F.2d at 687. Such a suit also is one "arising under" federal law, *see* 28 U.S.C. § 1331, and jurisdiction is also provided by the mandamus statute, 28 U.S.C. § 1361. *Id. See also* Wright and Miller, *Federal Practice and Procedure:* Civil §§ 1427, 3654. The operative question is whether the United States has waived its sovereign immunity to such a challenge by Roseburg. Where, as here, the challenge only requires the court to adjudge the lawfulness of agency action under the APA, the suit is not barred by sovereign immunity. *State of Washington v. Udall, supra,* at 417 F.2d 1310, 1319.

The government also argues that I lack jurisdiction because the FTC's action is one "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). I agree that I lack jurisdiction on this ground. Whether the FTC acts now or later, whether it calls for more evidence and delays a decision pending receipt of that evidence, is a matter "committed to agency discretion by law." Although this exception to the jurisdiction of the courts to review agency action has been narrowly construed, the exception applies when "there is no law to apply" in deciding the challenge, *see Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971), *quoting* S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945). "A court will not undertake review of agency action unless it can discern a standard against which to measure it." *Johnson Oyster Co. v. Baldridge,* 704 F.2d 1060, 1062 (9th Cir.1983).

In the present case there is no law for me to apply in deciding whether the FTC's refusal to rule immediately, and its call for additional evidence, was lawful or unlawful. There is no law or standard governing whether a factual record is sufficiently developed to allow agency action immediately, without looking into the facts further. It is to avoid such issues that the courts enforce the exhaustion doctrine, and require litigants to submit to full agency fact finding before review is sought. *See Lone Star Cement, supra,* at 339 F.2d 510–512. Since there is no law to apply, I lack jurisdiction to hear a challenge to the agency action in calling for more evidence. 5 U.S.C. § 701(a)(2).

Roseburg, however, contends that I should apply the "abuse of discretion," "arbitrary or capricious," or "substantial evidence" standards to this controversy. Roseburg argues that the FTC "rejected" Roseburg's bid on legally insufficient grounds, since the consent order does not state that the FTC may reject a bid because of its anti-competitive potential.

Although I do not have jurisdiction, I will examine these contentions and rule thereon in the event that an appellate court might conclude there is jurisdiction.

■ The FTC argues that Roseburg lacks "standing" to pursue a challenge based upon the wording of the consent order. I agree. Roseburg was not a party to the consent decree and was not an intended beneficiary of that order. Assuming for the sake of argument that the consent decree imposes a standard for the FTC's exercise of discretion in deciding whether to accept or reject a bid—and I discern no such standard in the order, nor can any party point to such a standard—only L–P could challenge an allegedly wrongful refusal by the FTC. There is no private right of action for third parties arising out of a consent agreement between others.

Even if Roseburg had "standing" to contest the FTC's action, review is barred by 5 U.S.C. § 701(a)(2). There is no standard by which I can determine whether an agency should or should not defer decision while more evidence is gathered, and there is no standard by which I can judge the lawfulness of the FTC's action. The consent order places no limits upon the FTC's discretion. Obviously this court could not order the FTC to enter into or conclude a settlement agreement on specific terms. This court cannot import into the agreement terms which are not there. There is "no law to apply" to the FTC's decision to accept or reject a bid, and therefore I lack jurisdiction to judge the FTC's action. *Johnson Oyster Co. v. Baldridge, supra,* at 704 F.2d 1062.

■ In the event that I accepted all of Roseburg's contentions thus far and subjected the FTC's action to review under any possible standard—"substantial evidence," "arbitrary or capricious," "abuse of discretion"—it would survive such review. Assuming I required the FTC to meet a standard of "anti-competitive impact" in order to reject a specific bid, the FTC's action would still be lawful. Roseburg does not contend that the FTC was incorrect when it asserted that Roseburg's acquisition of

Rocklin would increase concentration in the western wood products field, although it would decrease concentration on a nationwide basis. The FTC's action in delaying a final decision in light of these facts was not arbitrary, capricious, an abuse of discretion, or devoid of substantial evidence. Even if the FTC had rejected Roseburg outright on this ground, and barred Roseburg from bidding again—and they did not—then the FTC would have acted lawfully. The FTC could validly define the relevant market as the western wood products industry, and could decline to endorse a transaction which would have an anti-competitive effect thereon.

Roseburg argues that the FTC is pursuing a "more acceptable purchaser" standard, i.e., is seeking a bidder for Rocklin whose presence in the industry will spur competition. Assuming for the sake of argument that this is the case, the FTC would be within its rights in so doing. There is no requirement in the order that the FTC accept any particular bid or type of bid. It was obviously the intent of the consent order to lessen, not continue, anti-competitive effects.

Roseburg relies upon three cases in support of its argument that the FTC must approve its bid: *United States v. Armour and Co.,* 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *U.S. v. Martin Marietta,* 1980–81 Trade Cases [CCH] ¶ 63,673 (N.D.Ill.1980); and *United States v. Aluminum Co. of America,* 1967 Trade Cases [CCH] ¶ 71,973 (N.D.N.Y.1966). To the extent that these cases have any application here, they favor the lawfulness of the FTC's action.

In *Armour and Co.,* the issue was whether a consent decree which forbade Armour from engaging in the retail food business also forbade a company to acquire Armour if *that* company engaged in the retail food business. The Supreme Court, 4–3 with two Justices abstaining, held that the acquisition was not forbidden by the terms of the decree and thus was lawful. "If the parties had agreed to such a prohibition, they could have chosen language that would have es-

tablished the sort of prohibition that the Government now seeks." 402 U.S. 679, 91 S.Ct. 1756. That is what occurred in this case. The parties reached a bargain to the effect that the FTC would have veto power over any purchase. Roseburg was not a party to that agreement and thus cannot challenge its terms, but even if it could, the requirement that L–P divest "subject to the prior approval of the Commission" can only be interpreted as giving the FTC the power to veto a prospective bidder whose acquisition of Rocklin would have anti-competitive potential.

In *Martin Marietta,* a consent decree required divestiture to an "effective competitor." The court in that case found that the prospective purchaser would be an "effective competitor," and approved the sale. The government contended that the bidder would not be "the most desirable competitor," but the court pointed out that the language in the consent order forbade such a standard. In any event, the court found "that whatever standard is considered, whether it be the terms of the Decree itself or some other urged by the government, that this divestiture is consistent with both the terms of the decree and the public interest." *Martin Marietta* stands for the proposition that the terms of the consent decree itself, not some other standard, create the applicable guide. Here the decree gives the FTC the power to veto any purchaser and sets no limits upon that power. Such limits might have been the proper subject of negotiation between the parties, but no such limits were imposed. A non-party cannot, five years after the consent order issued, import its own terms into the decree by asserting that the FTC must approve a particular bid.

In *U.S. v. Aluminum Company of America,* there was apparently no standard in the consent decree for judging the suitability of bidders, so the court applied the following standard to determine whether a particular bidder's acquisition would have anti-competitive effects: the divestiture "must eliminate the effects of the violation found without being punitive in its nature or limited by economic hardship." This formula-tion was ultimately derived from *United States v. Dupont,* 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961), where the Court concluded that the remedy for anti-competitive effects must *eliminate* the tendency towards monopoly inherent in the violation: "If our examination persuades us that the remedy decreed leaves the public interest ... inadequately protected, we should be derelict in our duty if we did not correct the error." *Id.* at 366 U.S. 326, 81 S.Ct. 1250.

Applying these standards to the present case, the FTC could legitimately conclude that Roseburg's acquisition of Rocklin would not eliminate the tendency towards monopoly complained of, and would leave the public inadequately protected. These standards are not present in the consent order, and it may be that the FTC's power of prior approval over potential bidders, which is not limited by any language in the consent order, is even broader than this standard. But, applying *any* standard of review of the record, I find that the FTC's action is not subject to a successful challenge.

There is one final bar to Roseburg's challenge, this time raised by L–P. L–P points out that, under the terms of its agreement with Roseburg, Roseburg could only acquire the Rocklin plant *in the event of FTC approval* of the Roseburg bid. L–P argues and I agree that any rights of Roseburg are subject to the condition precedent, which has not occurred. Although Roseburg may have an interest in this litigation sufficient to support its intervention and participation, its interest in the plant is clearly contingent upon an eventuality which both L–P and Roseburg recognized they could not control. While it is possible that *L–P* could argue that the FTC's action was wrongful, it is difficult to see how Roseburg could challenge the FTC's action, as a stranger to the agreement, when L–P does not.

L–P appears to argue that its deal with Roseburg is terminated by the FTC's action. I disagree. The FTC may yet approve the Roseburg bid, in which case L–P would perform on that agreement. The condition

precedent to L–P's performance has not yet occurred, but it may in the future. This fact reinforces the conclusion that this challenge to the FTC's deferral of decision is premature. Roseburg's motion for summary judgment on that challenge is denied.

Roseburg sought an opportunity to rebrief the finality issue after oral argument and I granted the request. Although Roseburg has urged thoughtful and imaginative arguments on the finality of the FTC's action, I find its position unpersuasive.

Roseburg places much reliance upon *American Dairy of Evansville, Inc. v. Bergland,* 627 F.2d 1252 (D.C.Cir.1980). *American Dairy* addresses finality considerations within the unique statutory and factual context of milk marketing orders, an area of the law which has generated a specialized jurisprudence. *See Id.* at 1255–1261. The Court in *American Dairy* faced a situation in which an administrative officer decided certain issues, denying relief to petitioners, but also decided other issues in favor of petitioners. *Id.* at 1257. With respect to the latter ruling, however, the officer did not fashion relief but deferred to the Secretary of Agriculture's possible acquiescence in his ruling, retaining jurisdiction to fashion relief if the Secretary did not grant it. *Id.* The D.C. Circuit found that the officer's ruling was specifically designated by statute to be "final," *see Id.* at 1261 and n. 64, and that the possibility of voluntary remedial action by the Secretary, or of future proceedings to secure such action, did not impinge upon either the finality requirement or exhaustion principles. *Id.* at 1259–1260.

*American Dairy* is not in point here. Its facts and statutory basis are not similar to the FTC's action deferring decisions pending further investigation. In *American Dairy,* there was a persuasive dissent, arguing that the decision under review was not final and pointing out that the majority had ignored a Ninth Circuit precedent, *Rasmussen v. Hardin,* 461 F.2d 595, 597–598 (9th Cir.1972). *See American Dairy, supra,* at 1271.

Roseburg also finds comfort in *EDF v. Ruckelshaus,* 439 F.2d 584, 592, 596 (D.C. Cir.1971). There, however, the D.C. Circuit stated that where an "evidentiary record" was lacking, remand to the agency was appropriate for the generation of such a record and the provision of a statement of reasons for the action taken. *Id.* at 595–598. If Judge Bazelon's opinion, which arose out of the Department of Agriculture's repeated refusals to take action banning DDT, has relevance to this proceeding, it counsels the generation of an evidentiary record prior to judicial review.

Roseburg cites *Western Oil and Gas v. E.P.A.,* 633 F.2d 803 (9th Cir.1980), for the proposition that the FTC's action is final and subject to review. *Western Oil* is not in point because, there, all parties conceded that the E.P.A. had taken final action: "[t]he parties agree that the California designations are the EPA's 'last word' on the status of air quality in California." *Id.* at 807. The agency in this case does not make this concession, *see* Response to supplemental brief at p. 2, n. 1, and indeed could not, since the "last word" in this case is far from written.

Finally, Roseburg relies upon a case arising under the National Environmental Policy Act (NEPA), *Friedman Bros. v. Lewis,* 676 F.2d 1317 (9th Cir.1982). There the issue was whether an Environmental Impact Statement (EIS) was required for the action of federal mass transit officials approving the acquisition of land for construction of a bus maintenance facility. *Id.* at 1318–1319. There again, "the agency ha[d] spoken its last word" on the project. *Id.* at 676 F.2d 1319. The Ninth Circuit rejected an argument that the agency action was not final because the land for the project had not yet been acquired, since "the purpose of an EIS is to provide decision makers with the information required to evaluate the environmental impact of their decision before they make it." *Id.* at 676 F.2d 1320. The Ninth Circuit also noted that the provision of the early "second look" requirement of an EIS would "not interfere with any ongoing agency decision-making process." *Id.* at 676 F.2d 1319. The special require-

ments of NEPA are not relevant in this case. Review at this date would interfere with an ongoing agency decision-making process.

In summary, examination of the supplemental authorities submitted by Roseburg reinforces my conclusion that there is no final agency action in this case ripe for review. *See Bakersfield City Sch. Dist. v. Boyer, supra,* 610 F.2d at 626.