**HOME DIAGNOSTICS INC., Plaintiff,**

v.

**LIFESCAN, INC., Defendant.**

**No. C99–21269 JW.**

United States District Court,
N.D. California,
San Jose Division.

Oct. 26, 2000.

See also 103 F.Supp.2d 345.

Scott Mosko, Finnegan Henderson Farabow Garrett & Dunner, Palo Alto, CA, for plaintiff.

David Eiseman, Quinn Emanuel Urquhart Oliver & Hedges, Palo Alto, CA, for defendant.

**ORDER GRANTING–IN–PART AND DENYING–IN–PART HDI'S MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT BASED ON COLLATERAL ESTOPPEL**

WARE, District Judge.

## I. INTRODUCTION

This case concerns the application of the collateral estoppel doctrine in a second patent infringement case between the same parties that litigated a prior patent infringement case. Counterclaim I in this suit involves the same patent but a different accused product than the first case. Counterclaim II involves a different patent and different accused product. The Court finds that there is no legitimate dispute that the accused product in this case contains the identical structure as was previously litigated. The Court therefore applies the doctrine of collateral estoppel and grants summary judgment as to Counterclaim I. Summary judgment is denied as to Counterclaim II.

## II. BACKGROUND

This is an action for declaratory judgment. Plaintiff, Home Diagnostics, Inc. ("HDI") filed this suit seeking judgment that the use of its new blood glucose monitoring systems, called the Prestige LX meter and the Prestige Smart Systems (collectively "the LX") does not infringe either LifeScan's U.S. Patent No. 5,049,487 (the "'487 patent") or LifeScan's U.S. Patent No. 5,849,692 (the '692 patent).

The current suit arose in the context of multiple litigations between the parties. See Court's Order of June 19, 2000. Most pertinent to the current motion is a lawsuit filed in the United States District Court for the District of Delaware in December 1996, where LifeScan asserted that HDI's Prestige meter, a predecessor product to the LX product at issue in this suit, infringed the '487 patent ("the Delaware Action"). The Delaware Action was tried to a jury in March 1999, with Chief Judge Joseph Farnan, Jr. presiding. The jury rendered a verdict finding, inter alia, that use of two versions of HDI's Prestige blood glucose monitoring system does not literally infringe claim 1 of the '487 patent but does infringe under the doctrine of equivalents. On June 21, 2000, Judge Farnan overrode the jury verdict of infringement, granting HDI's motion for judgment of non-infringement as a matter of law ("JMOL"). After the jury finding of infringement but before issuance of the JMOL, LifeScan filed a preliminary injunction motion in this Court, seeking to enjoin HDI from selling both the Prestige and LX products, relying extensively on the jury finding. However, the JMOL issued in time for this Court to consider it in denying the preliminary injunction motion.

HDI asserts collateral estoppel based upon Judge Farnan's JMOL and moves for summary judgment that the LX does not infringe the '487 patent. HDI also seeks summary judgment on that basis with respect to the '692 patent. HDI noticed the motion for hearing on September 25, 2000. The Court deems it appropriate to rule on the matter on the basis of the submitted papers and without oral argument pursuant to Civil Local Rule 7–1(b). The motion is GRANTED as to Counterclaim I and DENIED as to Counterclaim II.

## III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and iden-

tifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. If he meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law ... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 2434–35, 115 L.Ed.2d 447 (1991) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual

facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service,* 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

■ The doctrine of collateral estoppel, also known as issue preclusion, conserves judicial resources by precluding relitigation of issues that have already been decided in a prior proceeding. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651 (Fed.Cir. 1984), *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700 (Fed.Cir.1983). For collateral estoppel to apply, the following requirements must be met: (1) the issue must be identical to one decided in the first action; (2) the issue must have been actually litigated in the first action; (3) resolution of the issue must have been essential to a final judgment in the first action; and (4) the party opposing application of collateral estoppel must have had a full and fair opportunity to litigate the issue in the first action. *A.B. Dick,* 713 F.2d at 702.

## IV. DISCUSSION

■ As the basis of its collateral estoppel motion, HDI cites the JMOL, which held that HDI's "Prestige" model blood glucose monitor does not infringe claim 1 of the '487 patent. In overruling the jury's finding of infringement, the Delaware court found that the Prestige monitor does not satisfy element (e), the "predetermined time" element, of claim 1. Judge Farnan stated:

[T]he Court concludes, as a matter of law, that insufficient evidence was pre-

sented from which the jury could have concluded that step (e) was literally present in the Prestige meters. Although both of Plaintiff's liability experts, Dr. Smith and Mr. Kramer, testified about the operation of the Prestige meter, the Court finds their testimony to be conclusory and unclear on the issue of a predetermined time period.... Mr. Kramer's testimony undercut in some respects his opinion that the Prestige meter operates according to a predetermined time period. For example, Mr. Kramer testified:

> Q: And you agree that it is not known before the test begins with the Prestige device at which of these five second intervals the result will be displayed, correct?
>
> A: Are we still talking about the 070 version?
>
> Q: In either one.
>
> A: Either one? It is correct that the readings will be taken every five seconds, and we cannot determine which of those five seconds will produce the result that will be displayed to the user.

(Tr. 950:7–18). To this extent, Mr. Kramer's testimony suggested that the Prestige meter does not use a time period determined in advance.

*LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 361 (D.Del.2000). Judge Farnan further held as a matter of law that the Prestige meter did not infringe the predetermined time element under the doctrine of equivalents. *Id.* at 361–62. Judge Farnan clearly adjudicated the specific issue of whether the Prestige method of taking reflectance readings every five seconds during the test meets the "predetermined time period" limitation. Judge Farnan determined as a matter of law that it does not.[1]

HDI relies on the Delaware decision to challenge LifeScan's Contingent Counterclaims I and II. Even though Counterclaim I involves different products than the Delaware case, and Counterclaim II involves different products and a different patent than the Delaware case, HDI asserts that the identical issue resolved by the Delaware court is raised by the Counterclaims.

### A. Counterclaim I

A central question in this motion is whether the JMOL estops LifeScan from asserting the same patent claim against different HDI products. HDI asserts that, although the Prestige and LX products have differences, the LX meters "share the operational features relevant to the 'predetermined time period' claim limitation." (Opening Brief, 5:19–20). Specifically, HDI argues that the LX, like the Prestige, takes reflectance readings at five second intervals and that it is not known prior to the test which of the five second intervals will provide the final reading. (Opening Brief, 5:21–23).

### 1. Where Identical Issues Are Raised, Collateral Estoppel May Apply to a Product Not Previously Litigated.

As a threshold matter, LifeScan argues that collateral estoppel may be applied "only if the accused device is the same as a device that was the subject of prior litigation." (Opposition, 14:4–6). LifeScan seems to argue that collateral estoppel is proper only where there is "overall identity" as opposed to "identity between relevant portions" of the accused product. (Opposition, 13:20–25). The Court disagrees. The Court is unpersuaded that the cases cited by LifeScan stand for this proposition.

First, there is no clear support in *Molinaro* for LifeScan's assertion that *Molina-*

---

1. A final judgment retains its preclusive effect despite pendency of an appeal. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1381 (Fed.Cir.1999). LifeScan has appealed Judge Farnan's decision to

the Federal Circuit. If LifeScan prevails on its appeal, Lifescan may then move this Court to modify this judgment accordingly. *Id.* at 1382.

*ro* concerns application of collateral estoppel where the second suit involves "the very same product" as the earlier suit. HDI has effectively questioned this proposition by submitting the *Molinaro* district court decision, in which the district court analogized the *Molinaro* case to a case where collateral estoppel was applied to a second accused device that was not the exact same device as was previously found noninfringing. *Molinaro v. Fannon/Courier Corp.*, No. 74–1492, slip op. at 4–5 (D.N.J. December 14, 1983).[2] The district court's comparison of the two cases strongly suggests that the Federal Circuit *Molinaro* decision contemplated application of collateral estoppel to a nonidentical product.

*Del Mar* presents a closer case. The Federal Circuit stated in *Del Mar* that "[a] device not previously before the court, *and shown to differ from those structures previously litigated,* requires determination on its own facts." *Del Mar*, 836 F.2d at 1324 (emphasis added). LifeScan interprets this comment to suggest that there must be complete identity between the products for collateral estoppel to apply. (Opposition, 14:6–8). This Court is reluctant to draw such an extreme conclusion, given that in *Del Mar*, the district court's refusal to apply collateral estoppel was predicated on its finding that the accused device used different circuitry than the previously litigated device. *Id.* The issue of whether that different circuitry infringed the patent had not previously been litigated. Therefore, *Del Mar* did not address the situation where an accused product, though different from a previously litigated product, contains a structure that is identical to a structure that was previously determined to be non-infringing.

2. The Court stated:
More recently, in a case closely analogous to the one at hand, the Western District of New York held that collateral estoppel may apply to a prior holding of noninfringement even if the second accused device is '[not] the exact same device as was previously found noninfringing.' *Overhead Door Corp. v. Whiting Roll-up Door Manufacturing Corp.*, 215 U.S.P.Q. 428, 433 (W.D.N.Y. 1981). The court declared that the defendant would be allowed to successfully assert a defense of collateral estoppel if it could demonstrate that its devices differed from the patented devices in the same way or ways as the devices accused in the earlier action.

To adopt LifeScan's argument would undermine the principles of collateral estoppel by allowing relitigation of precisely the same issue, that of whether a particular structure within a product satisfies a particular element of the asserted patent claim. If a structure in a product is found to be identical to a structure in an otherwise different, previously litigated product, the judgment as to whether that structure meets the relevant claim element must apply to the later litigation to avoid repetitive litigation of the same issues. However, to prevail in the current context, HDI must establish that there is no genuine issue of disputed fact that the pertinent structures in the two devices are identical.

*2. HDI Has Met Its Burden For Summary Judgment.*

HDI has met its initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. HDI submitted the declaration of Paul Anderson to support the assertion that the pertinent structures in the Prestige and LX meters are identical. (Mosko Dec. Ex. H (Anderson Dec.) at ¶¶ 26, 33, 34). In addition, HDI cites several instances where LifeScan argued to the Court that there were no significant differences between the Prestige and LX meters. (Opening Br. at 6–7).

LifeScan has failed to respond with specific facts to set forth a material issue in dispute. Most notably, LifeScan has not disputed HDI's assertion that the LX takes reflectance readings at five second intervals and that it is not known prior to the test which of the five second intervals will produce the result that will be displayed to the user. LifeScan attempts to

raise a material fact dispute by asserting that "it is apparent even from a lay person's review" that the computer program which operates the LX is different from the program that operates the Prestige, and that this difference suggests that the Prestige and LX systems operate in different ways. (Opposition, 13:8–20). However, LifeScan has failed to demonstrate the materiality of this difference in computer programs. In particular, LifeScan has not submitted any expert declaration stating that the differences in the computer programs reflect a difference in the way that the Prestige and LX take reflectance readings. Materiality cannot be established by mere assertions in legal memoranda. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, Inc., 690 F.2d 1235 (9th Cir.1982). Moreover, LifeScan previously submitted an expert declaration in support of its preliminary injunction motion, attesting that "[d]ifferences between the method of operation of the Prestige meter ... and the new Prestige LX ... art insignificant from the standpoint of comparing the methods to the patent claims referenced above." (Daley Dec. Ex. A (Smith Dec.) at ¶ 32). Absent any specific evidence supporting LifeScan's allegations of differences, and in view of the numerous legal and factual representations that LifeScan made to this Court contradicting its current position, LifeScan has failed to raise a material issue of fact.

HDI has therefore met the summary judgment standard to establish that the Prestige and LX products are identical in the respect that both take reflectance readings at five second intervals and it is not known prior to the test of the blood glucose which of the five second intervals will produce the result that will be displayed to the user. To the extent that LifeScan now asserts that this method of operation meets the "predetermined time" element of claim 1 of the '487 patent, that issue is identical to the issue decided in the Delaware action.

### 3. The Circumstances Do Not Justify A Rule 56(f) Continuance.

■ LifeScan urges denial of this motion based on a need for discovery pursuant to Fed.R.Civ.P. 56(f). However, LifeScan has failed to submit the requisite declarations stating specifically what information is sought, proffering sufficient facts to show that the evidence sought exists, and how that information would preclude summary judgment. *See, Church of Scientology of San Francisco v. Internal Revenue Service*, 991 F.2d 560 (9th Cir. 1993). Moreover, LifeScan's argument in its Opposition Brief that it has not been able retain a computer software expert to analyze the computer code contradicts a prior declaration made in support of LifeScan's motion for preliminary injunction. Specifically, the declaration of LifeScan's expert John Smith states:

I examined and tested a Prestige LX meter and Prestige test strips, and identified the principles of operation of the Prestige LX system by examination of the computer code contained in the microprocessor and the constants contained in memory for the meter.

. . .

Differences between the method of operation of the Prestige meter, that was the subject of the March 1999 trial, and the new Prestige LX (or Walgreen's Prestige Smart System) meter, are insignificant from the standpoint of comparing the methods to the patent claims referenced above.

(Daley Dec. Ex. A (Smith Dec.) at ¶¶ 2, 32). LifeScan has already argued to this Court that it had the opportunity to examine the computer code, and its expert concluded that the Prestige and LX products had insignificant differences as to the elements pertinent to infringement of claim 1 of the '487 patent. The Court therefore reject's LifeScan's plea for further discovery prior to ruling on this matter.

*4. HDI Has Met All Other Required Elements For Application of Collateral Estoppel to Counterclaim I.*

HDI has met its burden of establishing the additional elements of collateral estoppel. It is undisputed that the issue was actually litigated in the Delaware action, that issue was essential to the final judgment of non-infringement in that action, and that LifeScan had a full and fair opportunity to litigate the issue in the Delaware action. Therefore, the doctrine of collateral estoppel dictates the conclusion that LX's method of taking reflectance readings at five second intervals does not meet the predetermined time period element. Given that infringement requires satisfaction of every element of a patent claim (*General Mills v. Hunt–Wesson,* 103 F.3d 978, 981 (Fed.Cir.1997)), the LX systems do not infringe the '487 patent as a matter of law.

**B. Counterclaim II**

■ HDI urges the Court to apply collateral estoppel to LifeScan's Counterclaim II, which asserts infringement of the '692 patent. HDI downplays the difference in the claim language of the '487 and '692 patents. Although collateral estoppel may be used to apply the same claim scope to a previously construed claim term (*See In re Freeman,* 30 F.3d 1459, 1466 (Fed.Cir. 1994)), this Court declines to apply collateral estoppel to claim terms that have yet to be construed. HDI's motion as to Counterclaim II is therefore DENIED.

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS HDI's motion as to Counterclaim I and finds that the LX products do not infringe the '487 patent as a matter of law. The Court DENIES HDI's motion as to Counterclaim II.