**VISA U.S.A. INC., Plaintiff,**

v.

**FIRST DATA CORP.; First Data Resources; and First Data Merchant Services Corporation, Defendants.**

No. C 02–1786–JSW.

United States District Court, N.D. California.

April 15, 2005.

M. Laurence Popofsky, Stephen V. Bomse, Marie L. Fiala, Heather N. Leal, Heller Ehrman, LLP, San Francisco, CA, Robert J. Vizas, Robert L. StoleBarger, Richard J. Mooney, Holme, Roberts & Owen, San Francisco, CA, for Plaintiff.

Beth H. Parker, Geraldine M. Alexis, Jonathan P. Hersey, Todd A. Pickles, Bingham, McCutchen LLP, San Francisco, CA, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART FIRST DATA'S MOTION FOR PARTIAL SUMMARY JUDGMENT; SCHEDULING HEARING ON VISA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WHITE, District Judge.

Now before the Court is the motion of Defendants and Counterclaimants First Data Corporation, First Data Resources Inc., and First Data Merchant Services Corporation (collectively, "First Data") for partial summary judgment holding that Plaintiff and Counterdefendant Visa U.S.A. Inc. ("Visa") be precluded from relitigating certain issues found against it in *United States v. Visa U.S.A., Inc., et al.*, 163 F.Supp.2d 322 (S.D.N.Y.2001) (*"Visa*

*I*"), *United States v. Visa U.S.A. Inc., et al.*, 344 F.3d 229 (2d Cir.2003) (*"Visa II"*), and in *In re Visa Check/Mastermoney Antitrust Litigation*, No. 96–CV–5238 (JG), 2003 WL 1712568 (E.D.N.Y. April 1, 2003) (*"Walmart"*), and that those findings be deemed established in this case pursuant to the doctrine of non-mutual offensive collateral estoppel. Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby DENIES IN PART and GRANTS IN PART First Data's motion.[1]

## I. BACKGROUND

First Data seeks to invoke the doctrine of offensive non-mutual collateral estoppel to preclude Visa from re-litigating eight specific findings in *Visa I*, *Visa II*, and *Walmart*. These findings include: (1) Visa is a consortium of competitors; (2) the United States is the appropriate geographic scope of the general purpose card product and the general purpose core systems market; (3) there is a general purpose card market, which is the market for credit and charge cards issued under the Visa, MasterCard, American Express, and Discover brand names; (4) there is also a general purpose card network services market which is comprised of the suppliers of services to the general purpose card issuers; (5) Visa has market power in the network services market; (6) Visa's exercise of market power has harmed competition in the market for network services; (7) Visa has also used its sufficient market power in the credit card services market to force merchants to do something that they would not do in a competitive market—to use Visa's off-line debit card services, and; (8) debit card services is in a distinct antitrust market from credit card services and other forms of payment. (*See* Appendix B

to First Data's Motion (citations and quotations omitted).)

## II. ANALYSIS

### A. Doctrine of Offensive Non–Mutual Collateral Estoppel

■ "Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985), *superseded in part by statute on other grounds as stated in Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1988) (per curiam). A party seeking to invoke the doctrine of offensive non-mutual collateral estoppel must demonstrate that "(1) the issue at stake [is] identical to the one alleged in the prior litigation; (2) the issue [was] actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992). These factors are applied strictly. It is not sufficient that an issue is "factually similar" to the one in an earlier case; to satisfy the collateral estoppel factors, the issues must be *identical* and involve same facts and surrounding context. *Western Oil & Gas Ass'n v. United States EPA*, 633 F.2d 803, 809 (9th Cir.1980) (emphasis added).

### 1. Visa's Status as a Single Entity or Joint Venture

■ In its First Amended Counterclaims, First Data alleges that Visa's network processing rules violate Section 1 of the Sherman Act. Visa avers in its Reply to that First Data's Sherman Act § 1

---

1. The Court HEREBY GRANTS the Requests for Judicial Notice filed by Visa and First Data. Fed.R.Evid. 201(b).

claims are barred because "Visa and its members banks are a 'single entity' ... and are thus unable to conspire with each other." (Visa's Reply, ¶ 207 (Sept. 9, 2004).) First Data argues that the doctrine of non-mutual offensive collateral estoppel should preclude Visa from arguing in this case that it is a single entity because of the Second Circuit's conclusion in *Visa II* that Visa is a "consortium of competitors". (First Data's Mot., p. 12.)

Having reviewed the language in *Visa II* on which First Data relies to support its argument on this issue, the Court finds that First Data has not met its burden to show that the issues are identical. First Data concedes in its reply to Visa's opposition to First Data's motion for partial summary judgment that an entity can be considered a joint venture in one situation, and a single entity in another depending on the context in which the entity is analyzed. (Reply, p. 2.) First Data also concedes that the "exclusionary rules" at issue here, which purportedly restrict the ability of acquiring and member banks to use third party processors like First Data, are different from the exclusionary rules at issue in *Visa I* that prohibited issuing banks from issuing American Express and Discover cards. Notwithstanding these differences, First Data contends that the two exclusionary rules are "parallel" because both rules place limitations on issuing and acquiring banks. (*Id.*, p. 3.) Parallel, however, is not "identical" for purposes of non-mutual offensive collateral estoppel.

Even if the issues were "identical", the Court is not persuaded that Visa actually litigated the single/joint entity issue. The language in *Visa II* upon which First Data relies to support its argument states, without any discussion, that "Visa [ ] and MasterCard ... are not single entities; they are consortiums of competitors." *Visa II,* 344 F.3d at 242. As Visa correctly points out, this statement was made in response

to an analogy proffered, and ultimately rejected by the court, to support an argument made by Visa on appeal that related to the proper analysis for evaluating harm to competition. *Id.* It was not, as First Data contends, related to an explicit finding that Visa was a joint entity. In fact, there is no indication that at either the district or circuit court level Visa argued that it was improper to consider it a joint venture. (Opp., p. 10–12; Declaration of M. Lawrence Popofsky ISO Visa's Opposition to First Data's Motion for Partial Summary Judgment ("Popofsky Decl."), ¶¶ 3–9 ("Visa at all points conceded that, for purposes of the rule at issue in [*Visa I* and *Visa II* ], it was a joint venture, functioning in that context as a combination of horizontal entities, and therefore subject to rule of reason horizontal restraints analysis under Section 1").) Having failed to satisfy its burden to show that collateral estoppel is appropriate here, the Court HEREBY DENIES First Data's motion for partial summary judgment on this issue.

## 2. General Purpose Card Network Services Market

 First Data contends that Visa should be collaterally estopped from relitigating the existence of two relevant markets defined in *Visa I*. These markets include: (1) the general purpose card network services market, and (2) the general purpose card antitrust market. In *Visa I,* the court concluded that the general purpose card network services market consisted of two "basic or core functions": (i) "the infrastructure and mechanisms through which general purpose card transactions are conducted, including the authorization, settlement, and clearance of transactions" and (ii) defining and controlling "[m]erchant acceptance of a card brand ... and merchant discount rate is established, directly or indirectly, by the networks".

First Data claims that it alleges the same two relevant antitrust markets in this case. (FACC ¶ 30, ¶ 132, respectively.) First Data concedes that it must define these markets to prevail on its claims. In making this concession, it contends that it can derive from the general purpose card network services market established in *Visa I* the two relevant markets alleged here, or as First Data analogizes, begin the marathon at mile 20 rather than at mile 0. (Mot., p. 17.)

First Data's argument fails for several reasons. First, the Court is unable to determine from the record before it whether the relevant markets alleged in this case could be carved out from the general purpose card network services market defined in *Visa I*. First Data has not provided this Court with the expert report relied upon by the court in *Visa I* when that court defined the general purpose card network services market. Nor has First Data provided any other evidence from the "34 day bench trial involving over 6,000 pages of trial testimony, volumes of deposition testimony, and approximately 6,000 exhibits" in *Visa I* that would enable this Court to adequately compare underlying factual similarities between the two markets. (Mot., p. 4.) Further, the *Visa I* court's discussion of the relevant product market mentions authorization, settlement, and clearance of transactions, but not the manner in which third party intra-processors like First Data participate in this process. According to First Data's counsel, MasterCard does permit intra-processing. (Hearing Trans., p. 25:20–21.) Absent from the record is a discussion of whether this fact could alter the "authorization, settlement, and clearance" component of the general purpose card network services market sought to be established here. Based on the foregoing, First Data has not met its burden to show that non-mutual offensive collateral estoppel is appropriate here.

Aside from its failure of proof, First Data has also not provided any authority supporting its contention that collateral estoppel is appropriate where the antitrust markets are "parallel" but not identical, or where a party seeks to establish a general product market and then carve out the relevant market from that general market. In both *Western Oil & Gas Ass'n v. EPA,* 633 F.2d 803 (9th Cir. 1980), and *Pool Water Prods. v. Olin Corp.,* 258 F.3d 1024 (9th Cir.2001), the Ninth Circuit rejected efforts to collaterally estop a party from relitigating the relevant product market for precisely the same reason here: the relevant product markets were not identical. *Selectron, Inc. v. American Tel. & Tel. Co.,* 587 F.Supp. 856 (D.Or.1984), is distinguishable because there, the party against whom collateral estoppel was sought, AT & T, conceded that the relevant product markets were identical. *Id.* at 861. Likewise, in *Home Diagnostics Inc. v. LifeScan, Inc.,* 120 F.Supp.2d 864 (N.D.Cal. 2000), a patent infringement case, the court collaterally estopped a party from asserting an infringement claim where a court had rejected previously a similar infringement claim brought by the same party involving a different product. First Data erroneously relies on this case to argue that collateral estoppel is appropriate even where the products are different. While the actual products were different, the infringement claim was premised on identical claim language that formed the basis for the previously rejected infringement claim. *LifeScan,* 120 F.Supp.2d at 870. Collateral estoppel was appropriate because the claim language was identical. Here, the Court cannot compare whether the two components of the general purpose card network services market are identical to the relevant markets alleged in this case because the relevant markets in this case have yet to be defined and

the description of this market is too vague to determine whether collateral estoppel is appropriate.

Runners are not permitted to begin marathons at mile 20. Nor are litigants allowed to invoke non-mutual offensive collateral estoppel where the issues are "parallel" to findings in previous cases to ease their burden at trial. The issues must be identical. First Data's motion for partial summary judgment on this issue is DENIED.

### 3. General Purpose Card Antitrust Market.

■ First Data argues that the "general purpose card antitrust market" defined in *Visa I* should be established here because First Data alleges the same relevant market as part of its Section 1 Sherman Act tying claim. (Mot., p. 16; FACC, ¶ 132.) In its tying claim, First Data alleges that the general purpose card network market is a tying market, and that the (yet to be defined) credit card network processing services constitutes the relevant tied market. (*Id.*) As previously discussed, First Data seeks to establish here through collateral estoppel the general purpose card network market defined in *Visa I* on the grounds that it is identical to the tying market alleged here.

As with the general purpose card network services market, First Data has failed to show how the relevant markets are identical when the exclusionary rules are different. More specifically, First Data has not shown that in the context of Visa's rule prohibiting private arrangements, that the general purpose card market would be defined to exclude "other forms of payment, such as cash, checks or debit cards." (Proposed Finding Three). Furthermore, First Data alleges three different tying markets, only one of which appears to be similar to the general purpose card market established in *Visa I*.

The two other alleged tying markets are more narrow, one consists of only Visa and MasterCard and the other consists of only Visa. As previously discussed, the Court declines to permit First Data to establish general markets and carve out from those markets whatever First Data ultimately establishes as the relevant tied market.

### 4. Remaining Proposed Findings.

The remaining proposed Findings (Five through Seven), relate to Visa's purported market power within the relevant markets defined in *Visa I* and the harm to competition caused by Visa's exercise of its market power in those markets. Finding Eight addresses the exclusion of the debit card services antitrust market from credit card services and other forms of payment. First Data's failure to establish the ability to use non-offensive collateral estoppel in this case precludes inquiry into Visa's purported exercise of market power in the network processing services market (Finding Five), the alleged harm to competition in that market (Findings Six and Seven), and whether debit card services is in a distinct antitrust market from credit card services and other forms of payment (Finding Eight). Based on the foregoing, First Data's motion for partial summary judgment is DENIED.

### 5. Appropriate Geographic Scope for Resolution of Issues.

First Data argues that *Visa I* and *II* established in this case that "the United States is the appropriate geographic scope of the general purpose card product market and the general purpose card core systems market." (First Data's Appendix B, citing *Visa I*.) In its response to First Data's Appendix B, Visa concedes that "[t]he United States is the appropriate geographic scope for assessing the issues presented here," but argues that the

"rules, surrounding contexts, relevant market analyses, and time periods differ" from *Visa I*. (Visa's Response to Appendix B, ¶ 2.) To the extent that the parties agree on limiting whatever relevant markets are ultimately defined in this case to the United States, First Data's motion for partial summary judgment is GRANTED on this narrow ground and the Court finds that the United States is the appropriate geographic scope for evaluating First Data's antitrust claims.

## III. CONCLUSION

For the foregoing reasons, First Data's motion for partial summary judgment is DENIED in PART and GRANTED in PART. With the exception of establishing the United States as the proper geographic scope, First Data's motion for partial summary judgment is denied on all grounds.

In the interest of potentially resolving the single/joint entity issue before trial, the Court HEREBY GRANTS Visa leave to file a motion for summary judgment on the narrow issue of whether it is a single entity or joint venture in this case. This motion will be heard on Friday, August 5, 2005 at 9:00 a.m. The parties are directed to comply with the briefing schedule set forth in Civil Local Rule 7–2 and 7–3.

**IT IS SO ORDERED.**